**UNITED STATES of America, Appellee,**

v.

**Martin FONTANEZ,**
**Defendant–Appellant.**

**No. 1045, Docket 88–1567.**

United States Court of Appeals,
Second Circuit.

Argued April 18, 1989.

Decided June 13, 1989.

**34**

Stewart L. Orden, New York City, (Joel Cohen, New York City, of counsel), for defendant-appellant.

Daniel A. Nardello, Asst. U.S. Atty., New York City, (Benito Romano, U.S. Atty. S.D.N.Y., Celia G. Barenholtz, Asst. U.S. Atty., New York City, of counsel) for appellee.

Before VAN GRAAFEILAND, ALTIMARI and MAHONEY, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Martin Fontanez appeals from a judgment of the United States District Court (Judge Charles M. Metzner) convicting him after a jury trial of distributing three glassine envelopes of heroin within 1,000 feet of a school in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C) and 845a(a) and 18 U.S.C. § 2. On this appeal, Fontanez contends that the district court, by allowing a read-back of testimony and giving additional instructions to the jury in his absence, violated his right to be present at all stages of his trial. We agree.

For the reasons stated below, we reverse the judgment of conviction against Fontanez and remand to the district court for a new trial.

## BACKGROUND

On June 7, 1988, Martin Fontanez was arrested for allegedly aiding and abetting Daniel Hernandez in the sale of thirty dollars worth of heroin. Earlier that day, an undercover New York City police agent purchased three glassine envelopes of heroin with thirty dollars in marked money from a man on the corner of Clinton and Henry Streets in Manhattan. After the purchase, the undercover agent radioed a description of the man who sold the drugs and of another who acted in the role of a "steerer," one who attracts customers by calling out the name of the drug. Several minutes later, a police backup team spotted Fontanez on Jefferson Street around the corner from Henry Street, and based on the undercover agent's description identified him as the steerer. Shortly thereafter, Hernandez was apprehended on Henry Street and found to be in possession of the marked money.

The trial against Fontanez as a sole defendant commenced on October 12, 1988 with the impaneling of the jury. The following day testimony was received, summations delivered and jury deliberations initiated. Up to this point, Fontanez was present at all stages of his trial. Fontanez testified on his own behalf denying he had acted as a steerer for Hernandez or ever spoken to the undercover police agent.

At approximately 10:40 on the morning of October 14, 1988, Fontanez was taken into police custody in connection with a crime unrelated to that for which he was being tried. It was not until 12:30 p.m. on the same day that the trial was reconvened and jury deliberations continued. The court received a note from the jury at 1:50 p.m. requesting a read-back of certain testimony. Defense counsel immediately objected to "taking anything in the absence of the defendant." The government agreed with the defense position indicating to the court that Fontanez was in police custody and would return to the trial that afternoon. After consulting with the government appellate unit, the government attorney advised the court not to proceed without a waiver. Then, the court, over defense counsel's objection and against the government's advice, allowed the read-back to the jury explaining that Fontanez was "unavoidably detained." When defense counsel noted a specific objection, Judge Metzner responded: "I will make a finding that the defendant does not have to be present during proceedings if they consist solely of reading back testimony to a jury during their deliberations."

At 3:00 p.m., the jury informed the court that it was unable to reach a verdict. The

court proposed giving a modified *Allen* charge to the deadlocked jury. *See Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The government attorney apprised the court that Fontanez was about to be escorted to the courtroom. Without waiting for the defendant, the court delivered the *Allen* charge. Following the charge as the jurors were exiting for further deliberations, the defendant, escorted by federal marshalls without restraints, entered the courtroom. Defense counsel once more noted a specific objection. Observing that Fontanez was on his way to the courtroom when the *Allen* charge commenced, defense counsel remarked that "a five minute delay would not have been substantial."

At 5:35 p.m., the jury returned a guilty verdict against Fontanez. On December 20, 1988, Fontanez was sentenced to a two year term of imprisonment to be followed by a six year term of supervised release. Fontanez is presently incarcerated.

## DISCUSSION

It has long been settled that an accused enjoys a right both at common law and pursuant to the sixth amendment's confrontation clause to be present at all stages of trial. *See Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); *Lewis v. United States*, 146 U.S. 370, 373, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892); *Schwab v. Berggren*, 143 U.S. 442, 448, 12 S.Ct. 525, 527, 36 L.Ed. 218 (1892); *United States v. Hernandez*, 873 F.2d 516, 518 (2d Cir.1989); *United States v. Pastor*, 557 F.2d 930, 933 (2d Cir.1977). It is also well settled that under the due process clauses of the fifth and fourteenth amendments a defendant must be allowed to be present at his trial "to the extent that a fair and just hearing would be thwarted by his absence." *See Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934)); *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985), *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975); *United States v. Crutcher*, 405 F.2d 239, 242 (2d Cir.1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969). It is beyond dispute that a judge's instructions to a jury constitute an integral part of the trial. *See Shields v. United States*, 273 U.S. 583, 588–89, 47 S.Ct. 478, 479–80, 71 L.Ed. 787 (1927); *United States v. Glick*, 463 F.2d 491, 493 (2d Cir.1972); *Wade v. United States*, 441 F.2d 1046, 1049–50 (D.C.Cir.1971).

The right to be present at all stages of one's trial constitutes a foundational principle underpinning the entire law of criminal procedure. *Cf.* 6 M. Rhodes, *Orfield's Criminal Procedure under the Federal Rules* §§ 43:3, 43:13 (2d ed. 1987). Congress, in framing Rule 43 of the Federal Rules of Criminal Procedure, "explicitly intended to codify existing law concerning a defendant's constitutional and common law rights to be present throughout trial." *United States v. Alessandrello*, 637 F.2d 131, 138 (3d Cir.1980), *cert. denied*, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981) (citing Fed.R.Crim.P. 43, 1946 Advisory Committee Note, ¶ 1; and 8B *Moore's Federal Practice* ¶ 43.02[1], at 43–67 (2d ed. 1980)). Thus, like every criminal defendant, Martin Fontanez was entitled to be present at all stages of his trial.

 Despite the constitutional and statutory dimensions of a defendant's right to be present, the right may be waived. *Diaz v. United States*, 223 U.S. 442, 456–58, 32 S.Ct. 250, 254–55, 56 L.Ed. 500 (1912); *Hernandez*, 873 F.2d at 518. In reviewing a case where the trial proceeded in the defendant's absence, we examine the trial record in light of three issues. First, we review whether the district court properly exercised its discretion in finding that the defendant knowingly and voluntarily waived the right. *See Hernandez*, 873 F.2d at 518; *Pastor*, 557 F.2d at 934. If the court properly found the right to be waived, we next consider whether the district court abused its discretion in concluding there was on balance a controlling public interest to continue the trial in the defendant's absence. *See United States v.*

*Sanchez,* 790 F.2d 245, 250 (2d Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986); *United States v. Tortora,* 464 F.2d 1202, 1210 (2d Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). Finally, if the district court was in error to continue the trial in a defendant's absence, we ask whether that error was harmless error. *See United States v. Toliver,* 541 F.2d 958, 964–65 (2d Cir.1976). *See also Chapman v. California,* 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

### 1. *Voluntary Waiver*

■ On this appeal, the government has changed its position and now attempts to justify the continuance of the trial in the absence of the defendant. The government first argues that Fontanez waived his right to be present at his trial. Although trial courts must vigorously safeguard a criminal defendant's right to be present, a defendant may expressly or effectively waive the right. *Hernandez,* 873 F.2d at 518. The right, for example, has been held effectively waived as a result of a defendant's disruptive behavior at trial, *Illinois v. Allen,* 397 U.S. at 346–47, 90 S.Ct. at 1062–63, jumping bail, *Taylor v. United States,* 414 U.S. 17, 19–20, 94 S.Ct. 194, 195–96, 38 L.Ed.2d 174 (1973), failure to appear for trial, *Tortora,* 464 F.2d at 1208, and deliberate absence from trial once it had commenced in his presence, *Pastor,* 557 F.2d at 934–39.

A defendant's waiver of the constitutional and statutory right to be present "must be both 'knowing' and 'voluntary.'" *Tortora,* 464 F.2d at 1208. The district court's factual findings as to whether the defendant is knowingly and voluntarily absent will not be disturbed unless "clearly erroneous." *See Pastor,* 557 F.2d at 934. Based on these findings of fact, the decision as to whether the defendant's absence constitutes waiver of the right is "vested in the sound discretion of the trial judge." *Pastor,* 557 F.2d at 934. As Judge Van Graafeiland stated in his insightful dissent in *Pastor,* 557 F.2d at 946, we must not condone a district court's findings, on which a decision of waiver is based, where

they stand in direct contradiction to the evidence. We have recently remanded a case for an evidentiary hearing where the district court "left unexplored serious questions as to whether the appellant's absence was knowing and voluntary." *Hernandez,* 873 F.2d at 518. However, there is no need to remand for an evidentiary hearing in the present case since the facts are clear and undisputed.

On October 14, 1988, when the jury reconvened for deliberations, the defendant's absence was a direct result of being taken into police custody in connection with a crime not related to the trial. Defense counsel objected to "the jury's taking anything in the absence of the defendant." The government attorney, after consulting with his appellate unit, strongly advised the court not to proceed without a waiver. The court proceeded, over defense counsel's objection and the government's own position, to allow a read-back of testimony and to give the deadlocked jury an *Allen* charge. Here, there clearly was neither escape nor fleeing of the defendant, nor a deliberate failure to appear without reason. To the contrary, Fontanez had demonstrated his good intention by his presence throughout his trial up to the time he was taken into custody.

The government attempts to support its present position by drawing an analogy between the facts of this case and one where a defendant has been found to have knowingly and voluntarily waived his right by jumping bail. *See, e.g., Taylor,* 414 U.S. at 19–20, 94 S.Ct. at 195–96. It is apparent upon scrutiny, however, that Fontanez who was detained in police custody found himself in a significantly different situation than the defendant who by intentionally jumping bail absents himself from the trial. Moreover, in *Crutcher,* 405 F.2d at 243, we observed that a defendant detained in police custody while a jury was impanelled did not have the power to voluntarily waive his right. While we do not today adopt a *per se* rule that every absence of a defendant as a result of police custody violates the constitutionally and statutorily protected right to be present, we find based on the

undisputed facts of this case that Fontanez did not voluntarily waive his right to be present during his own trial.

## 2. *The Public Interest*

■ Assuming *arguendo* that Fontanez was voluntarily absent, the government contends that the district court correctly proceeded with the trial in his absence. Although we need not reach this question, an examination of the *Tortora* factors further supports the conclusion that the district court should not have allowed any read-backs or charges to the jury during the defendant's absence. *Tortora*, 464 F.2d at 1210. In *Tortora*, we held that a district court must consider a "complex of issues" in determining whether to proceed with trial. *Id.* These factors include:

> the likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials, again particularly in multiple-defendant trials where the evidence against the defendants is often overlapping and more than one trial might keep the Government's witnesses in substantial jeopardy.

*Id. See also Sanchez*, 790 F.2d at 250; *United States v. Reed*, 639 F.2d 896, 903–904 (2d Cir.1981); *Pastor*, 557 F.2d at 934–39. The district court may exercise discretion to proceed "only when the public interest clearly outweighs that of the voluntarily absent defendant." *Tortora*, 464 F.2d at 1210.

The record in this case does not indicate a sufficient basis upon which the district court could have reasonably concluded that the public interest outweighed the defendant's interest in being present. Fontanez was held in police custody that lasted only a few hours. In addition, the government informed the court before the *Allen* charge was given that Fontanez would be available shortly. Fontanez, in fact, entered the courtroom simultaneously to the jury's exit after the *Allen* charge. In light of these facts, we can only conclude that there was little or no apparent likelihood of a prolonged delay or need to reschedule. Moreover, since Fontanez was a lone defendant, none of the *Tortora* multiple defendant factors apply to this case.

## 3. *Harmless Error*

■ The government further argues that even if the district court was in error to continue the trial in the defendant's absence, it was harmless error. Specifically, the government contends that the defendant's absence made no difference in the result reached. In determining whether reversible error occurred, we ask if the defendant's absence created "any reasonable possibility of prejudice." *Toliver*, 541 F.2d at 965 (citing *Walker v. United States*, 322 F.2d 434, 436 (D.C.Cir.1963), *cert. denied*, 375 U.S. 976, 84 S.Ct. 494, 11 L.Ed.2d 421 (1964)). *See also Chapman*, 386 U.S. at 24, 87 S.Ct. at 828; *United States v. Rodriguez*, 545 F.2d 829, 831 (2d Cir.1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977); *Wade*, 441 F.2d at 1050. Thus, the standard on appellate review places a heavy burden on the government.

In *Wade*, 441 F.2d at 1050, the United States Court of Appeals for the District of Columbia attributed the standard to the importance of the defendant's constitutional right to be present at all stages of trial. Noting the importance of the defendant's presence during jury deliberations, the court stated:

> [T]his aspect of a trial has constitutional prestige in the Sixth Amendment guarantee of the right to confront adverse witnesses—in good part a constitutional recognition of a psychological influence. Though perhaps to a less degree, the same influence pertains to the right of a confrontation of defendant and jury.... This is especially so when as here a deadlocked jury is ... given an *Allen* charge, and subsequently renders its verdicts.

*Id.* The court held that where a defendant was absent during an *Allen* charge, to find his absence was harmless would be too speculative. *Id.* at 1051. The harmless error standard "is not whether the accused was actually prejudiced, but whether there is 'any reasonable possibility of prejudice.'" *Id.* at 1050.

In *Toliver*, 541 F.2d at 965, we held that the government was able to "demonstrate

beyond a reasonable doubt that the violation of a defendant's right of confrontation was harmless error." That case involved a multiple-defendant trial where one of the defendants was absent during some testimony due to illness. We reasoned that the "psychological function" served by a defendant's presence could be accomplished by the presence of codefendants. *Id.* Thus, although the harmless error standard reflects a strong presumption in favor of the defendant's right, it does not require an automatic reversal of every conviction where a defendant has been absent from part of the trial.

Based on the facts of this case, we are not satisfied that the government has met the standard. At one point during deliberations, the jury reported to the court that it was deadlocked. In response, the court gave the jury a modified *Allen* charge. The court proceeded with the charge although it had been informed Fontanez was present in the building and was being escorted to the courtroom. As the court finished the charge, and the jury exited to continue deliberations, Fontanez, the lone defendant, was brought into the courtroom escorted by federal marshals. Thus, as contemplated in both *Toliver* and *Wade,* Fontanez was deprived of the "psychological function" of his presence on the jury during a crucial phase of his trial. Under these circumstances, the government has failed to demonstrate that the defendant's absence produced no reasonable possibility of prejudice. Accordingly, we find that it was not harmless error when the district court continued without the presence of Fontanez.

### CONCLUSION

For all the foregoing reasons, we reverse the judgment of conviction entered against Fontanez and remand to the district court for a new trial.

MAHONEY, Circuit Judge, concurring in the judgment:

I join in the judgment reached by my colleagues because (1) the issue brought before us could so easily have been avoided, and (2) it is probably appropriate to conclude that the government did not

"demonstrate beyond a reasonable doubt that the violation of ... defendant's right of confrontation was harmless error." *United States v. Toliver,* 541 F.2d 958, 965 (2d Cir.1976).

As we stated in *United States v. Crutcher,* 405 F.2d 239 (2d Cir.1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969), however, the cases supporting the harmless error rationale and result generally "involve communications in the absence of the defendant between the court and the jury after deliberations had begun." *Id.* at 244. As to constitutional error, furthermore, we have held that a read-back of testimony to the jury in the absence of the defendant did not provide a basis for habeas relief. *United States v. Jackson,* 263 F.2d 282, 283 (2d Cir.1959).

I write separately, therefore, to note that there were in this case two separate and easily avoided instances of proceedings in the defendant's absence during the jury's deliberations, and to stress my view that the result reached here should not be taken to establish any general rule that such violations of Fed.R.Crim.Proc. 43(a) ordinarily result in prejudice calling for reversal of the related conviction and a new trial.