**UNITED STATES of America, Appellee,**

v.

**Anthony P. MACKEY, et al.,
Defendants.**

**Appeal of Sean M. Jackson, Defendant.**

**No. 1206, Docket 89–1643.**

United States Court of Appeals,
Second Circuit.

Argued May 11, 1990.

Decided Sept. 20, 1990.

Patricia L. Countryman, Altamont, N.Y., for defendant-appellant.

Bernard J. Malone, Jr., Asst. U.S. Atty., N.D.N.Y., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Syracuse, N.Y., of counsel), for appellee.

Before ALTIMARI and MAHONEY, Circuit Judges, and POLLACK, District Judge.[*]

MAHONEY, Circuit Judge:

Defendant-appellant Sean M. Jackson appeals from a judgment of the United States District Court for the Northern District of New York (George E. Woods, *Judge*, of the Eastern District of Michigan, sitting by designation) convicting him after a jury trial of conspiracy to possess with intent to distribute cocaine base, or crack, a Schedule II controlled substance, in violation of 21 U.S.C. § 846 (1988). Jackson was acquitted at trial of the two substantive charges against him: distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988), and possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988).

On this appeal, Jackson contends that in proceeding with the trial in his absence, without a knowing and voluntary waiver on his part, the district court violated his right to be present during trial, resulting in prejudicial error. For the reasons stated below, we reverse the judgment of conviction against Jackson and remand for a new trial.

## BACKGROUND

On July 17, 1989, Sean M. Jackson was arrested for allegedly participating, together with Anthony P. Mackey, in the sale of fifty vials of cocaine base, or crack, to an undercover officer in Catskill, New York on June 8, 1989. An indictment filed July 28, 1989 stated three counts against Jackson and Mackey: (1) conspiracy to possess with intent to distribute cocaine base, or crack, in violation of 21 U.S.C. § 846 (1988); (2) distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988); and (3) possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988).

The defendants were tried jointly in the United States District Court for the Northern District of New York in Albany, New York before Lee P. Gagliardi, *Judge*, from October 5–10, 1989. Jackson was then in the custody of the United States Marshal pursuant to a writ of habeas corpus ad prosequendum issued to the Sheriff of Greene County, New York, where Jackson had been incarcerated pending disposition of state charges against him, and appeared at every stage of the proceedings in his first trial. The jury returned a verdict of guilty on all counts against Mackey, but was unable to reach a verdict as to Jackson, resulting in a mistrial.

Jackson's attorney was notified during the week of October 16, 1989 that Jackson's retrial would commence in Utica, New York, at 8:30 a.m. on October 23, 1989. Jackson's attorney so advised Jackson on October 20, 1989, communicating with him by telephone at his grandmother's home in Catskill, New York, where Jackson was living. On the evening of October 22, 1989, Jackson called his attorney and advised her that he was having difficulty obtaining a ride for the next morning from Catskill to Utica, a distance of approxi-

---

[*] The Hon. Milton Pollack, Judge of the United States District Court for the Southern District of New York, sitting by designation.

mately 110 miles. The next morning, at approximately 7:45 a.m., Jackson called the office of the clerk of the court in Utica to report that he had been unable to obtain transportation. According to appellant's brief, Jackson's counsel then told him that she would send someone to Catskill to get him. Prior to any proceedings in the trial, before any court reporter was present, Jackson's attorney requested that the trial be adjourned until Jackson arrived. The court delayed the commencement of jury selection until approximately 11:00 a.m. Jury selection was then completed in Jackson's absence at about 12:30 p.m.

After a recess for lunch, with Jackson still absent, Jackson's attorney put her request for an adjournment on the record. Jackson's counsel pointed out the telephone calls from Jackson concerning lack of transportation, and further stated, "He doesn't have a driver's license and he is of a low socioeconomic status and he doesn't have the money to take a cab and hire someone, and I guess he is just experiencing trouble getting here this morning and this afternoon." Government counsel agreed that it might be appropriate for further proceedings to await Jackson's arrival, either on his own accord or in the custody of a marshal, but noted that the court "had a complete jury panel sitting here awaiting his trial."

The court continued its refusal to adjourn, but agreed to further delay the proceedings by not taking testimony in the case until 1:50 p.m. that afternoon, adding that if Jackson arrived later in the afternoon, the court reporter would be made available to Jackson and his counsel to read back the testimony taken in Jackson's absence. The court then concluded: "The animals do not run the zoo. That's the simple answer. So then, your motion is denied and we will proceed. See you at ten minutes to two." The court reconvened at 1:55 p.m., at which time the government called its first witness, New York State Police investigator Daniel R. Penny. Jackson was still absent. At approximately 2:50 p.m., during the testimony of the government's second witness, Drug Enforcement Administration Agent Michael

Metzger, Jackson arrived in the courtroom. In sum, Jackson missed the jury selection and approximately one hour of the proceedings, including all of the testimony of the government's first witness and a portion of the testimony of its second witness.

After the close of testimony that afternoon, the court gave Jackson and his attorney the opportunity to have the prior proceedings read back, as well as to recall the first two witnesses if Jackson so desired. They took advantage of the former offer, but not the latter. Before adjourning for the day, the court asked Jackson what his intentions were with respect to accommodations for the evening and returning to court the next day. Jackson indicated that he would return to Catskill and be back the following morning, assuring the court that he had "a definite ride" with a witness who had just testified. The court released Jackson on a $10,000 personal recognizance bond, admonishing him, "If you're not here, there is nothing but trouble."

On October 24, 1989, the trial proceeded without incident in the presence of the defendant. The jury began its deliberations at 11:36 a.m., and at 6:10 p.m. court adjourned. When court convened at 8:15 a.m. on the third day, October 25, 1989, however, Jackson had not arrived, having previously telephoned the clerk's office to advise his attorney and the court that the vehicle transporting him from Catskill had broken down. The jury continued deliberating without knowledge of Jackson's absence, and reached its verdict at 8:35 a.m., which was thereupon returned in Jackson's absence. Jackson's bail was revoked and the court issued a warrant for his arrest, as Jackson learned when he finally arrived at 11:00 a.m.

Jackson subsequently moved for a judgment of acquittal pursuant to Fed.R. Crim.P. 29 and for a new trial pursuant to rule 33, based, *inter alia*, upon the district court's failure to postpone the trial until such time as Jackson could be present for every stage thereof. The district court denied the motions on November 7, 1989, concluding that (1) Jackson had voluntarily waived his right to be present; (2) the

reasons given for Jackson's absences, transportation problems, were not sufficient; (3) the public interest justified proceeding with the trial in Jackson's absence; and (4) any error committed was harmless.

On November 29, 1989, the court sentenced Jackson to thirty-three months imprisonment, to be followed by three years of supervised release, together with a fifty dollar special assessment. Jackson filed a notice of appeal on December 6, 1989. A motion for release pending appeal was denied on January 9, 1990, and Jackson is currently serving his sentence.

## DISCUSSION

### A. *A Defendant's Right to Be Present at Trial.*

Jackson contends on appeal that the trial court abused its discretion in proceeding with the trial in his absence. As Jackson correctly points out, "an accused enjoys a right both at common law and pursuant to the sixth amendment's confrontation clause to be present at all stages of trial." *United States v. Fontanez*, 878 F.2d 33, 35 (2d Cir.1989) (citing *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); *Lewis v. United States*, 146 U.S. 370, 373, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892); *Schwab v. Berggren*, 143 U.S. 442, 448, 12 S.Ct. 525, 527, 36 L.Ed. 218 (1892); *United States v. Hernandez*, 873 F.2d 516, 518 (2d Cir.1989); and *United States v. Pastor*, 557 F.2d 930, 933 (2d Cir.1977)). Moreover, the defendant's right to be present at trial also is implicated by the fair trial concerns of the fifth and fourteenth amendments, " 'to the extent that a fair and just hearing would be thwarted by his absence.' " *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934)); *see also Hernandez*, 873 F.2d at 518. Finally, this right has been codified in Fed.R. Crim.P. 43, *see United States v. Reiter*, 897 F.2d 639, 642 (2d Cir.1990), subdivision (a) of which provides: "The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial includ-

ing the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."

Nevertheless, "[l]ike any constitutional guarantee, the defendant's right to be present at trial may be waived, *Snyder v. Massachusetts*, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), even if that waiver is implied from the defendant's conduct, *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)." *United States v. Tortora*, 464 F.2d 1202, 1208 (2d Cir.), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972); *see also Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973); Fed.R. Crim.P. 43(b)(1). Thus, "[a]s we stated in [*Tortora* ], '[w]hen a defendant has pleaded [not guilty] to the charges against him and knows that the trial of the charges is to begin on a day certain, the trial may start in his absence if he deliberately absents himself without some sound reason for remaining away.' " *Hernandez*, 873 F.2d at 518 (quoting *Tortora*, 464 F.2d at 1208); *see also Diaz v. United States*, 223 U.S. 442, 455, 32 S.Ct. 250, 254, 56 L.Ed. 500 (1912) (when defendant knowingly absents himself from court during trial, court may "proceed with trial in like manner and with like effect as if he were present").

█ We review the decision to proceed with a trial *in absentia* under an abuse of discretion standard, and the district court's factual findings will not be disturbed unless clearly erroneous. *Fontanez*, 878 F.2d at 36. As we further said in *Fontanez*:

In reviewing a case where the trial proceeded in the defendant's absence, we examine the trial record in light of three issues. First, we review whether the district court properly exercised its discretion in finding that the defendant knowingly and voluntarily waived the right. *See Hernandez*, 873 F.2d at 518; *Pastor*, 557 F.2d at 934. If the court properly found the right to be waived, we next consider whether the district court abused its discretion in concluding there was on balance a controlling public interest to continue the trial in the defen-

dant's absence. *See United States v. Sanchez,* 790 F.2d 245, 250 (2d Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986); *United States v. Tortora,* 464 F.2d 1202, 1210 (2d Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). Finally, if the district court was in error to continue the trial in a defendant's absence, we ask whether that error was harmless error. *See United States v. Toliver,* 541 F.2d 958, 964–65 (2d Cir.1976). *See also Chapman v. California,* 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

*Id.* at 35–36. We proceed to apply these inquiries to the facts here presented.

## B. *The Proceedings Herein.*

■ In the instant case, the trial court concluded that Jackson's absence, both on the first day of trial and again on the third day, amounted to an effective waiver of his right to be present at trial. In concluding that Jackson had waived his right to be present at such critical stages of the trial as the impaneling of the jury and the questioning of witnesses, the court relied in large part upon the standard stated in *Hernandez,* 873 F.2d at 518, and quoted hereinabove, *i.e.,* that Jackson knew when his trial was to commence, but nonetheless " 'deliberately absent[ed] himself without some sound reason for remaining away'." *Id.* (quoting *Tortora,* 464 F.2d at 1208). Jackson was concededly informed by his counsel of the date, time, and place of his trial. We must therefore consider whether the district court correctly concluded that Jackson's absence was "knowing, voluntary, and without sound excuse." *Hernandez,* 873 F.2d at 520.

### 1. Jackson's Initial Absence.

Jackson telephoned the court clerk the morning that trial commenced to advise that he was having car trouble and would be delayed in his arrival. The government contends that Jackson thereby effected a knowing and voluntary waiver of his right to attend his trial. We disagree.

Waiver has been found when the defendant had no contact with anyone and was presumed to have fled. *See United States v. Sanchez,* 790 F.2d 245, 249–50 (2d Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986). In this case, however, defense counsel put forth a "plausible, verifiable, and essentially unrebutted explanation for [defendant's] absence." *Hernandez,* 873 F.2d at 518. Defense counsel indisputably advised the court that Jackson was having trouble getting transportation to court. In *Hernandez,* we remanded the case to the district court for further factual inquiry, holding that the district court erred in failing to conduct such inquiry as to the voluntariness of the defendant's absence after defense counsel gave an explanation for Hernandez's absence. In this case, however, no remand is necessary because there is no dispute concerning the relevant facts.

The district court determined that the excuse provided by Jackson for his absence was insufficient. As the court stated in post-trial proceedings: "[T]he Court heard from counsel what [Jackson's] excuse was, heard from him later what his excuse was, and determined that it was not a valid reason." We disagree. This court has found sound reason for absence when the defendant did not know the correct starting date of the trial, *see Hernandez,* 873 F.2d at 518–19, and when the defendant was detained in police custody elsewhere, *see Fontanez,* 878 F.2d at 34–35. In our view, Jackson's absence on the first day of trial similarly fell short of being "knowing, voluntary, and without sound excuse," *Hernandez,* 873 F.2d at 520, and his trial therefore should not have proceeded in his absence.

In so ruling, we do not condone Jackson's apparently negligent and haphazard efforts to ensure his presence at trial. Nor do we deprecate "the additional burdens, waste and expense inflicted upon the court, government, [and] witnesses, ... and the public's interest in seeing the accused brought to trial as well as the court's responsibility to do so speedily." *Pastor,* 557 F.2d at 934. We conclude, however, that Jackson's conduct fell short of the "knowing, voluntary" absence that is required to

abrogate his constitutional right to be present during his trial.

Because we hold that the district court erred in concluding that Jackson's absence was knowing and voluntary, we need not consider the second prong of the *Fontanez* inquiry. It is only "[i]f the court properly found the right to be waived," *id.*, 878 F.2d at 35, that we go on to consider "whether the district court abused its discretion in concluding there was on balance a controlling public interest to continue the trial in the defendant's absence," *id.*[1] We therefore proceed immediately to the final question, whether the district court's erroneous decision to proceed constituted harmless error, *id.* at 36.

■ We conclude that on the facts here presented, the error committed was not harmless. Fed.R.Crim.P. 43(a) explicitly includes the impaneling of the jury as "a stage of the trial" at which the defendant's presence is required. This court, moreover, has "consistently held that the absence of the accused during the impaneling of a jury at his trial raises substantial constitutional concerns." *Hernandez*, 873 F.2d at 519. We went on in *Hernandez* to say that:

> In [*United States v. Crutcher*, 405 F.2d 239 (2d Cir.1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969)], this court indicated that the absence of a defendant during the impaneling of the jury—if not knowing and voluntary—may be error that " 'can never be treated as harmless error.' " 405 F.2d at 244 (citation omitted). A number of courts, both within and without this Circuit, have since wrestled with whether *Crutcher* should be read to mean that the absence of a defendant during voir dire of the jury is, if not knowing and voluntary, *per se* reversible error.

*Id.; see also United States v. Toliver*, 541 F.2d 958, 964 (2d Cir.1976) (*Crutcher* indicates absence of defendant during jury se-

lection might be too basic to be treated as harmless).

We need not articulate any blanket rule, however, because "even if the harmless error principle applies generally to departures from the mandates of Rule 43, the government has not been able to convince us that [Jackson] might not have been prejudiced by being absent." *Crutcher*, 405 F.2d at 244; *accord, United States v. Gordon*, 829 F.2d 119, 127 (D.C.Cir.1987) ("We need not ... decide whether [defendant's absence during jury selection] can *ever* be harmless; it is enough to find on the facts of this case that it was not.").

We acknowledge that Jackson's attorney was present at the jury selection, and that she appeared to defend his rights quite capably. For example, she exercised all of his allotted peremptory challenges. Nevertheless, Jackson might well have formed impressions concerning individual jurors that would have resulted in a different exercise of his peremptory challenges. *See Lewis v. United States*, 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892); *Crutcher*, 405 F.2d at 244.

Moreover, Jackson missed not only the jury selection, but also a substantial portion of the testimony given by adverse witnesses. After the luncheon recess, two witnesses were called by the government, and the second had nearly completed his testimony when Jackson arrived. These witnesses, both of whom participated in the undercover operation leading to Jackson's arrest, gave core testimony describing the events of the drug sale that led to Jackson's indictment.

Jackson's absence during this testimony, without more, may not have resulted in prejudicial error, in view of the fact that their testimony was read back to Jackson and his counsel, and the court offered to recall the two witnesses if Jackson wanted this done. *See United States v. Rogers*,

---

1. We note the observation in *Tortora*, 464 F.2d at 1210 n. 7, that "[i]t is difficult for us to conceive of any case where the exercise of this discretion [to proceed with trial] would be appropriate other than a multiple-defendant case." *But see Wilson v. Harris*, 595 F.2d 101, 103–04

(2d Cir.1979) (per curiam), affirming a decision to proceed with the trial of a single defendant who refused to attend his trial, while noting that *Tortora* "speculated that exercise of such discretion may only be appropriate in multiple-defendant cases." *Wilson*, 595 F.2d at 104.

853 F.2d 249, 251–52 (4th Cir.1988) (harmless error found where transcripts made available to absent defendant, as well as opportunity to recall witnesses).

Taking into account Jackson's absence during both jury selection and the testimony of principal government witnesses, however, we are unable to conclude that there existed "no reasonable possibility of prejudice." *Fontanez,* 878 F.2d at 38. This is especially the case in view of Jackson's prior mistrial, and his acquittal as to two of the three charges for which he was indicted at the trial leading to the present appeal.

2. Jackson's Second Absence.

■ On the third day of trial, when the car in which Jackson was being driven to court allegedly stalled in Albany, he called the court to advise that he would again be tardy. In fact, Jackson did not arrive until 11:00 a.m. In his absence, the jury concluded its deliberations and reached a verdict, which was taken by the court.

Surely no harm could result from allowing the jury, which was unaware of Jackson's absence, to continue its deliberations. Further, although Fed.R.Crim.P. 43(a) specifies a defendant's right to be present at "the return of the verdict," no prejudice occurred when Jackson was absent at that time. It cannot be plausibly contended that his presence would have altered the outcome of the verdict.

### CONCLUSION

The judgment of conviction is reversed and the case is remanded to the district court for further proceedings not inconsistent with this opinion.