07-2933-cr
*United States v. Tureseo*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2007

Docket No. 07-2933-cr

Argued:  June 23, 2008                                      Decided:  May 14, 2009

_____

UNITED STATES OF AMERICA,

        <u>Appellee</u>,

    v.

JUAN TURESEO, also known as Daniel J. Ortega, also known as Juan Escobar, also known as Juan Victoriana Fuentes, also known as Danny Ortega Ortiz, also known as Jose Victorino Fuentes,

        <u>Defendant-Appellant</u>.

_____

Before:  MINER and CABRANES, <u>Circuit Judges</u>, and BERMAN, <u>District Judge</u>.[*]

Appeal from a judgment of conviction and sentence entered in the United States District Court for the Southern District of New York (Duffy, <u>J.</u>), convicting defendant-appellant, following a jury trial, of (1) reentering the United States after deportation following a conviction for an aggravated felony; (2) making a false claim of United States citizenship; and (3) knowingly engaging in the use of a means of identification of another person in relation to a false claim of United States citizenship.  On appeal, defendant-appellant challenges the jury instruction as to the elements of (3) (aggravated identity theft) and claims denial of his right to be present at trial.

Affirmed in part and vacated in part.

---

[*] The Honorable Richard M. Berman, District Judge for the United States District Court for the Southern District of New York, sitting by designation.

JOHN T. ZACH and Jonathan S. Kolodner (*on the brief*), Assistant United States Attorneys, for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for appellee United States of America.

MALCOLM DUNCAN, Jennifer L. Colyer, Steven M. Witzel, and Darcy M. Goddard (*on the brief*), Fried, Frank, Harris, Shriver & Jacobson LLP, New York, NY, for defendant-appellant Juan Tureseo.

MINER, Circuit Judge:

Defendant-appellant Juan Tureseo ("Tureseo") appeals from a June 28, 2007 judgment of conviction and sentence entered in the United States District Court for the Southern District of New York (Duffy, J.). Tureseo was convicted, following a three-day jury trial, of (1) reentering the United States after deportation following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2) ("Count One"); (2) making a false claim of United States citizenship, in violation of 18 U.S.C. § 911 ("Count Two"); and (3) knowingly engaging in the transfer, possession, or use, without lawful authority, of a means of identification of another person during and in relation to the commission of falsely claiming United States citizenship as charged in Count Two, in violation of 18 U.S.C. § 1028A ("Count Three"). The District Court sentenced Tureseo to a term of imprisonment of 125 months on Counts One and Two, and a consecutive term of imprisonment of 24 months on Count Three, to be followed by a term of 1 year of supervised release. A mandatory special assessment of $300 was also imposed. On appeal, Tureseo challenges the jury instruction as to the elements of Count Three and claims denial of his right to be present at trial. Applying, inter alia, the Supreme Court's decision in Flores-Figueroa v. United States, — S. Ct. —, 2009 WL 1174852 (May 4, 2009), we affirm in part and vacate in part the District Court's judgment of conviction and sentence. We accordingly remand to the District Court for further proceedings.

2

# I.    BACKGROUND

## A.    The Deportation of Juan Tureseo

At an immigration hearing held on November 17, 1997, Tureseo admitted that he was not a United States citizen, that he was a native and citizen of El Salvador, and that he was in the United States without permission. At the conclusion of the proceedings, the immigration judge found Tureseo present in the United States without having been properly admitted or paroled, in violation of 8 U.S.C. § 1182(a)(6)(A)(i), and ordered him removed to El Salvador. Prior to his removal, Tureseo had been convicted in state court of attempted assault in the second degree with intent to cause physical injury with a weapon. In November 1997, an official of the former Immigration and Naturalization Service, now the Department of Homeland Security ("DHS"), witnessed the departure of Tureseo, by then also known as Jose Victorino Fuentes, from the United States at John F. Kennedy Airport in Jamaica, New York, on "Lasca" flight 681, pursuant to the removal order. Before being placed on that flight, Tureseo was photographed and fingerprinted by immigration authorities for purposes of completing a Warrant of Deportation.

## B.    Defendant Tureseo's Arrest and Trial

In May 2006, Immigration and Customs Enforcement ("ICE") was notified by the New York City Police Department that a previously deported alien — later identified as defendant Tureseo — had been arrested on or about May 3, 2006. After reviewing the documents contained in Tureseo's immigration file, ICE agents attempted to locate him. They eventually found Tureseo at an address in Brooklyn, New York. When questioned by the agents at that apartment, however, Tureseo first claimed that his name was "Danny Ortega." After being told that "it's a crime to lie to federal agents," however, he conceded that he was, in fact, Juan Tureseo. Tureseo then admitted that he was born in El Salvador, that he had been deported from the United States before, that he did not have permission to reenter the United States, and that he knew it was illegal for him to reenter the United States. The agents arrested Tureseo, and upon a search, the agents found on him a New York State Learner's Permit in the name of "Danny

3

Ortega," as well as a New York State Benefit Identification Card in the name of "Danny Ortega."

Following his arrest, a grand jury returned an Indictment on August 10, 2006, charging Tureseo with illegal reentry into the United States after removal from the United States subsequent to a conviction for the commission of an aggravated felony. Philip Weinstein of the Federal Defenders of New York was initially appointed to represent Tureseo. Tureseo told Weinstein that he was, in fact, Danny Ortega, a United States citizen. Tureseo asked Weinstein to contact his wife, who would supply proof of his citizenship. Weinstein did so and received a copy of a birth certificate indicating the birth of "Danny Ortega" in Puerto Rico. Weinstein then forwarded the birth certificate to the United States Attorney's Office for the Southern District of New York to obtain a dismissal of the illegal reentry charge.[1]

On December 4, 2006, the grand jury returned a Superseding Indictment, charging Tureseo with illegal reentry, false claim of United States citizenship, and the knowing unauthorized use of a means of identification of another person during and in relation to his false claim of United States citizenship.

At trial, the government called as a witness a person bearing the name of Danny Ortega. This person identified the information contained in the birth certificate produced by Tureseo as his own. He testified that the certificate listed his name, birthplace, mother's name, mother's birthplace, father's name, and father's birthplace. The government also called Margarita Ortiz, who was Ortega's mother. Ortiz testified that the contents of the birth certificate proffered by Tureseo pertained to her son, Danny Ortega. She confirmed Danny Ortega's birth date, his father's name, and her own name on the birth certificate. Ortiz testified that Tureseo was not her son.

At trial, the District Court accepted the qualifications of the ICE agent who arrested

---

[1] On October 20, 2006, Tureseo's current counsel, Steven M. Witzel of Fried, Frank, Harris, Shriver & Jacobson LLP, was substituted for Weinstein. Witzel was assisted by three attorneys from his firm who also appeared in court as his co-counsel for Tureseo.

Tureseo as a fingerprint expert. The agent testified that he had compared the fingerprints on the Warrant of Deportation for Juan Tureseo with the fingerprints that were taken from Tureseo at the time of his arrest. The result of that comparison was that the fingerprints from the Warrant of Deportation matched the fingerprints taken from Tureseo on the day of his arrest. Accordingly, the agent concluded that defendant Juan Tureseo, whom he had arrested in May 2006, was the same Juan Tureseo whom the government had deported in 1997. The agent also testified that he had performed a search of relevant immigration databases. According to the results of that search, Tureseo had never applied for or received permission to reenter the United States, he had never been a citizen of the United States, and he was never naturalized. The government and Tureseo made their closing arguments to the jury on January 25, 2007. The District Court proceeded to charge the jury the same day.

With respect to the jury instructions, both the government and Tureseo had submitted requests, pursuant to Fed. R. Crim. P. 30(a), for specific jury charges. Tureseo requested, inter alia, that the jury be instructed on the aggravated identity theft charge of Count Three to include that "the defendant knew at the time that he committed the offense that the identification in question belonged to another actual person." The District Court declined to accept both the government's and Tureseo's proposed jury charges, including Tureseo's proposed instruction on Count Three. The District Court charged the jury using its customary jury instructions for similar cases. As to Count Three, the District Court charged the jury as follows:

> [T]here is one more thing that you must decide and that is whether the government has proven beyond a reasonable doubt that during and in relation to the offense of making a false claim of citizenship, the defendant knowingly possessed or used without lawful authority a means of identification of another person. To act without lawful authority means to act without lawful authorization of the issuing government entity. . . . [I]dentification includes a birth certificate or driver's license or any identification number attached to those things. The means of identification must be that of an actual person.

Immediately following the District Court's jury instructions, outside the presence of the jury, Tureseo renewed his request on Count Three that the District Court require the jury to find "that

the defendant knew at the time he committed the offense that the identification in question belonged to an actual person." The District Court again declined to charge the jury as proposed by Tureseo. Thereafter, with all but a small portion of the instructions completed, the District Court directed the jury to return on the morning of the next day.

C.     The District Court's Conclusion of Jury Instructions

On the morning of January 26, 2007, Tureseo, who was being held in a detention facility when not in court for his trial, did not appear in court. The District Court informed the attorneys that it had been told that Tureseo "refused to come to court." The District Court stated that Tureseo's lead defense counsel, Steven M. Witzel, had asked the court for permission to "go over and get [Tureseo] moving and get him out, bring him over here" but that it was "now an hour plus since he made that phone call." The District Court further stated that "[t]he jury has been sitting [and] waiting. . . . [a]nd all that needs to be done is to give them the redacted indictment . . . [and] explain[] to them that they don't have to get to the third count if they acquit on the second count and that's it."[2] After acknowledging that one of Witzel's co-counsel who was present in the courtroom objected to the court continuing the jury charge, the court asked for the jury to be brought into the courtroom.

The District Court explained to the jury that "the absence of the defendant and [Witzel] is something that is of absolutely no significance whatsoever." The District Court then completed the jury instructions by stating that the jury could not "get to the third count without making a decision of guilt on the second count," and asked the jury to retire for deliberations.

Soon after the jury retired, Witzel returned with Tureseo to the District Court. Witzel and the District Court briefly discussed jury instructions before Witzel raised "one other — one matter with respect to what happened this morning" to explain Tureseo's absence. Witzel stated

---

[2] It will be recalled that Count Two charged Tureseo with making a false claim of United States citizenship, and Count Three charged Tureseo with unlawfully using a means of identification of another person in relation to his false claim of United States citizenship.

6

that he was informed of a problem at the detention facility at approximately 10:10 a.m. and that he left the courthouse at approximately 10:20 a.m. to "ascertain the situation." Witzel explained that Tureseo had

> begged the marshals to take him to court [but] the problem was, the same marshals who had taken him the last couple of days had double-cuffed him because he has a shoulder injury and cannot be single-cuffed, and a different marshal came today and tried to single-cuff him and could not close it and he — I don't know what the marshal thought or exactly what was said but apparently must have thought that [Tureseo] was either faking it or refusing to cooperate. [Tureseo] again said, I'm in the middle of trial, I need to go to court, please double-cuff me. The marshal apparently, according to our client, said to him that it's his problem. [Tureseo] again said, I need to come to court. And instead, he was not allowed to come to court. . . . [W]e were back here [at] about 11:20 [a.m.]

Witzel then moved for a mistrial, based on the absence of lead counsel and Tureseo from a portion of the charge. The District Court denied the motion.

During deliberations, the jury sent the District Court four notes, one of which requested that it be permitted to view Tureseo in person. The District Court permitted the jury to come into the courtroom and look at Tureseo. Shortly thereafter, the jury returned a verdict of guilty on all three counts. Tureseo was sentenced on June 28, 2007, and following entry of judgment, this timely appeal followed.

D.    The Present Appeal

On appeal, Tureseo argues that the District Court violated his Fifth and Sixth Amendment rights and, as well, Fed. R. Crim. P. 43, when it instructed the jury in his absence. Tureseo also argues that the District Court improperly instructed the jury in explaining the charge of aggravated identity theft in Count Three of the Indictment. Under the aggravated identity theft statute, 18 U.S.C. § 1028A, it is a crime to "knowingly transfer[], possess[] or use[], without lawful authority, a means of identification of another person" during and in relation to an enumerated predicate felony, which in this case was the Ortega birth certificate supporting the false claim of citizenship charged in Count Two. Tureseo maintains that to establish a violation of aggravated identity theft, the government was required to prove beyond a reasonable doubt

7

that Tureseo knew, at the time of the offense, that he was using the identity of an actual person in connection with his false claim of citizenship.

## II.     ANALYSIS

### A.     Standard of Review

This Court reviews a decision regarding a defendant's right to be present at a particular stage of trial de novo, see United States v. Canady, 126 F.3d 352, 360 (2d Cir. 1997), but a district court's determination of whether the defendant waived his right to be present at a particular stage of trial is reviewed for abuse of discretion, see United States v. Fontanez, 878 F.2d 33, 35–36 (2d Cir. 1989).  Where, as here, the defendant timely challenges the district court's jury instructions on a legal issue in proceedings below, this Court reviews the validity of the district court's jury instructions de novo.  See United States v. George, 386 F.3d 383, 397 (2d Cir. 2004).

### B.     Tureseo's Right To Be Present At His Trial

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant to be present at trial to confront witnesses and the evidence against him.  United States v. Gagnon, 470 U.S. 522, 526 (1985).  Through the Due Process Clause of the Fifth and Fourteenth Amendments, this right to be present has been extended to other critical stages of trial beyond those related to the defendant's rights to confronting witnesses and evidence.  See id. That is, a defendant "has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (internal quotation marks and citation omitted).  Taken together, then, the constitutional right to be present at one's own trial exists "at any stage of the criminal proceeding that is critical to its outcome if [the defendant's] presence would contribute to the fairness of the procedure." Stincer, 482 U.S. at 745; United States v. Peterson, 385 F.3d 127, 137 (2d Cir. 2004).  Rule 43 of the Federal Rules of Criminal Procedure reinforces this constitutional right by providing that a criminal defendant has a right to

be present at "every trial stage." See Fed. R. Crim. P. 43; Fontanez, 878 F.2d at 35 (stating that Rule 43 was "explicitly intended to codify existing law concerning a defendant's constitutional and common law rights to be present throughout trial" (internal quotation marks and citation omitted)). As relevant here, "[i]t is beyond dispute that a judge's instructions to a jury constitute an integral part of the trial." Fontanez, 878 F.2d at 35.

The defendant's constitutional and statutory right to be present, however, may be either expressly or effectively waived by the defendant. See, e.g., id. at 36 (citing, as examples, cases where the defendant effectively waived his or her right to be present by jumping bail, deliberately failing to appear for trial, or behaving in a disruptive manner during trial). To establish waiver, the District Court must conduct a record inquiry to determine whether the defendant's absence was "knowing and voluntary" and without sound excuse — otherwise, a remand is ordinarily warranted in the absence of such record inquiry. See United States v. Hernandez, 873 F.2d 516, 518–19 (2d Cir. 1989). Moreover, even after properly concluding that the right to be present has been waived by the defendant, the District Court must then determine whether "there was on balance a controlling public interest to continue the trial in the defendant's absence." Fontanez, 878 F.2d at 35. Any error by the District Court to continue the trial in the defendant's absence is reviewed for harmlessness, i.e., whether the error "'created any reasonable possibility of prejudice.'" See id. at 37 (quoting United States v. Toliver, 541 F.2d 958, 965 (2d Cir. 1976)); Toliver, 541 F.2d at 964–65 (stating that an error is harmless if harmless beyond a reasonable doubt); see also Stincer, 482 U.S. at 745 (stating that the right to be present is not guaranteed "when presence would be useless, or the benefit but a shadow" (internal citation and quotation marks omitted)).

Here, the record is unclear as to whether the defendant knowingly and voluntarily absented himself from his trial proceedings. Tureseo and one of his attorneys, Witzel, appeared in the District Court shortly after the court had finished giving the limited jury instruction in their absence. Witzel explained that Tureseo "begged" the marshal to take him to court but that the

9

marshal refused after Tureseo, who allegedly was suffering from a shoulder injury, insisted that he be "double-cuffed" rather than "single-cuffed." Beyond Witzel's explanation, however, the District Court did not conduct the requisite inquiry into the circumstances of Tureseo's absence. It did not confirm or inquire about Tureseo's shoulder injury or attempt to contact the marshals involved with moving Tureseo in and out of the detention facility. Cf. Hernandez, 873 F.2d at 518–19 (remanding case where, after the jury was impaneled in the absence of the defendant, the court failed to conduct inquiry into circumstances of defendant's absence on the next day when the defendant offered an explanation for his absence).

The record reveals that the District Court did not initially seek an explanation from either Witzel or Tureseo upon their appearance in court. Instead, following a short colloquy with respect to the content of the jury instructions, it was Witzel who initiated the explanation for Tureseo's absence as "one other — one matter with respect to what happened this morning." Although it may be that the District Court at some time conducted a thorough inquiry into the reasons for Tureseo's absence, that inquiry was not conducted on the record as required by law. See id. Accordingly, we are constrained to find that the District Court's decision to continue proceedings in Tureseo's absence was in error.

Notwithstanding the District Court's failure to inquire on the record about the nature and reasons for Tureseo's absence, however, we find that such error was harmless in the circumstances revealed here. Tureseo was present on the day when all but a small fraction of the jury instructions were given. He was absent on the following day only for the time it took for the court to give a brief instruction to the jury that it need not reach Count Three unless it first found Tureseo guilty of Count Two. Moreover, the District Court prevented the jury from drawing adverse inferences from Tureseo's absence by instructing it not to place any significance on the absence of defendant and Witzel. Cf. United States v. Fernandez, 829 F.2d 363, 367 (2d Cir. 1987) ("Fernandez's absence was not improperly used to influence the jury, as the government never called attention to his absence or argued that any negative inferences could be drawn from

10

it, and [the] Judge . . . explicitly instructed the jury to disregard Fernandez's absence."); see also United States v. Snype, 441 F.3d 119, 129 (2d Cir. 2006) (stating that a jury is presumed to follow the court's instructions). Insofar as Tureseo raises any concerns that the jury did not have an additional opportunity to examine his features — the main issue in his prosecution being one of identity — these concerns were eliminated when the jury was allowed to return to the courtroom to view him later during deliberations.

Moreover, in light of the overwhelming evidence of Tureseo's guilt, there was no possibility of prejudice here. With respect to the illegal reentry charge (Count One), the government established through fingerprint evidence that Tureseo was, in fact, the same "Juan Tureseo" who had been previously deported. There was also evidence presented at trial that Tureseo had signed his name "Juan Tureseo" on his fingerprint card and testimony of a federal agent that Tureseo had admitted to being the previously deported "Juan Tureseo" at the time of his arrest. On the false claim of United States citizenship charge (Count Two), it is undisputed that Tureseo directed his prior attorney to send a birth certificate of one "Danny Ortega" — a United States citizen — to the United States Attorney's Office. There was no dispute at trial that the birth certificate did not belong to Tureseo. The real Danny Ortega testified that the birth certificate was his, and Danny Ortega's birth mother testified at trial that the birth certificate was Danny Ortega's and that Tureseo was not her son.

Therefore, considering, in their totality, the brevity of the jury instructions given during Tureseo's absence, the District Court's direction to the jury not to place any significance on Tureseo's absence, the jury's opportunity to view Tureseo at its request, and the overwhelming evidence establishing Tureseo's guilt of Counts One and Two, any error by the District Court to continue proceedings in the absence of Tureseo was harmless beyond a reasonable doubt.

C.    Count Three and the Scienter Requirement

At the time of Tureseo's appeal, our sister circuits were in disagreement as to the elements of the aggravated identity theft provision, 18 U.S.C. § 1028A(a)(1), which provides:

11

> Whoever, during and in relation to any felony violation enumerated in subsection (c), <u>knowingly</u> transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1) (emphasis supplied). Specifically, the circuits were divided as to whether the <u>mens rea</u> of "knowingly" modifies only the verbs "transfers, possesses, or uses" or also modifies the prepositional phrase "of another person," even though that phrase comes after the adverb phrase "without lawful authority," the indirect object "a means," and the prepositional phrase "of identification." <u>Compare</u> <u>United States v. Mendoza-Gonzalez</u>, 520 F.3d 912, 915 (8th Cir. 2008) (holding that the "knowingly" <u>mens rea</u> does not modify "of another person"); <u>United States v. Hurtado</u>, 508 F.3d 603, 608–09 (11th Cir. 2007) (same); <u>United States v. Montejo</u>, 442 F.3d 213, 215 (4th Cir. 2006) (same), <u>with</u> <u>United States v. Godin</u>, 534 F.3d 51, 61 (1st Cir. 2008) (holding that the "knowingly" <u>mens rea</u> modifies "of another person"); <u>United States v. Miranda-Lopez</u>, 532 F.3d 1034, 1040 (9th Cir. 2008) (same); <u>United States v. Villanueva-Sotelo</u>, 515 F.3d 1234, 1246 (D.C. Cir. 2008) (same).

The Supreme Court resolved the circuit split in <u>Flores-Figueroa v. United States</u>, — S. Ct. —, 2009 WL 1174852 (May 4, 2009), where the Court held that the aggravated identity theft provision of 18 U.S.C. § 1028A(a)(1) "requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." <u>Id.</u> at *7. Accordingly, we are constrained to identify error in the District Court's refusal to instruct the jury that an aggravated identity theft conviction requires a finding that Tureseo knew that the means of identity he used to falsely claim United States citizenship belonged to another person, <u>i.e.</u>, an actual person. <u>See id.</u> at *6–*7 (concluding that the aggravated identity theft provision was intended to provide an enhanced sentence to those who knew the identity they were unlawfully using was of a "real" person). We note that the learned District Court did not have the benefit of the Supreme Court's holding in <u>Flores-Figueroa</u> or any guidance from this Court when it charged the jury in this case.

We further conclude that the District Court's error was not harmless. Because a jury

12

instruction that omits an essential element of the offense is constitutional error, a conviction can only stand if such error was harmless beyond a reasonable doubt. See DiGuglielmo v. Smith, 366 F.3d 130, 136 (2d Cir. 2004) (citing Neder v. United States, 527 U.S. 1, 8–10 (1999)). The government asserts that Tureseo "was not simply using a Social Security number or an A-Number . . . . Instead, he was using someone else's name, date of birth, biographical information and birth certificate," and thus argues that this evidence was sufficient for any reasonable jury to conclude that Tureseo, by "assuming" an alternate identity, knew that he was using the identity of an actual person. Although there appears to be substantial evidence for the jury to conclude that Tureseo knew that Ortega was an actual person at the time he used Ortega's birth certificate to falsely claim United States citizenship, the evidence does not all flow in one direction. For example, the jury was also presented with Ortega's testimony that he had never met or seen Tureseo before the trial, thus suggesting that Tureseo did not know of Ortega's existence at all. Therefore, we cannot conclude that the District Court's improper jury instructions were harmless beyond a reasonable doubt, and the District Court's judgment of conviction with regard to aggravated identity theft cannot stand.

**III.     CONCLUSION**

In accordance with the foregoing, the judgment of the District Court is VACATED as to the conviction of aggravated identity theft and AFFIRMED in all other respects. The case is remanded for further proceedings consistent with the foregoing.