Francesco POLIZZI, Appellant,

v.

UNITED STATES of America, Appellee.

No. 772, Docket 90–2362.

United States Court of Appeals,
Second Circuit.

Argued Dec. 5, 1990.
Decided Feb. 25, 1991.

Samuel J. Buffone, Washington, D.C. (Asbill, Junkin, Myers & Buffone, Washington, D.C., L. Barrett Boss, of counsel), for appellant.

Andrew C. McCarthy, Asst. U.S. Atty. S.D. of New York (Otto G. Obermaier, U.S. Atty. S.D. New York, Daniel C. Richman, Asst. U.S. Atty., of counsel), for appellee.

Before NEWMAN and WINTER, Circuit Judges, and DALY, District Judge.[1]

DALY, District Judge:

Francesco Polizzi appeals from a judgment of the United States District Court for the Southern District of New York, Pierre N. Leval, *Judge*, denying his petition filed pursuant to 28 U.S.C. § 2255 ("§ 2255 petition") to vacate his convictions in that court. One of 35 defendants charged in the so-called Pizza Connection indictment, Polizzi was convicted of narcotics and racketeering offenses in violation of 21 U.S.C. § 846 and 18 U.S.C. § 1962(d).[2] Over a year after his convictions, Polizzi's newly retained counsel filed a § 2255 petition motion alleging constitutional violations arising, *inter alia*, from: 1) the absence of any knowing and voluntary waiver of Polizzi's right to be present at trial during a five-week absence for medical-related reasons; and 2) the ineffective assistance of his

---

1. Honorable T.F. Gilroy Daly, of the United States District Court for the District of Connecticut, sitting by designation.

2. Polizzi's convictions were affirmed on appeal. *See United States v. Casamento*, 887 F.2d 1141 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990).

counsel. Following extensive briefings and a three-day evidentiary hearing in December, 1988, the district court issued a 38-page Opinion and Order on July 13, 1990 ("Opinion and Order"), rejecting all of Polizzi's claims. *Polizzi v. United States*, No. 88–1631, 1990 WL 100891 (S.D.N.Y. July 13, 1990) (Available on LEXIS, Genfed Library, 2Dist file). The present appeal, challenging only the court's rulings with respect to the above arguments, followed.

We agree with the district court that Polizzi's convictions were not constitutionally deficient, and, therefore, affirm the district court's denial of Polizzi's § 2255 petition.

## BACKGROUND

### A. *The Underlying Trial*

This appeal stems from what can only optimistically be called an aberration in the federal judicial system—the RICO megatrial. Begun on September 30, 1985, the so-called Pizza Connection case continued for seventeen months, consuming approximately 265 trial days, and concluding with the convictions of 18 of 22 defendants on March 2, 1987. The case produced over 40,000 pages of trial transcript, and involved the introduction of thousands of exhibits and the testimony of more than 275 witnesses. As we have previously noted, "[b]y any standard, the magnitude of this trial was extraordinary." *Casamento*, 887 F.2d at 1149.

The district court recognized early on that the challenges of the Pizza Connection case called "for a somewhat different approach to trial management," particularly as regarded the presence of defendants throughout the trial. Joint App. at 8 (Opinion and Order). Although under normal circumstances a defendant is required to be present at trial, *see* Fed.R.Crim.P. 43(a), the court concluded that "[w]hen the trial

will last nearly a year and a half ..., to take an inflexible approach to the usual rule would be something akin to the execution of a substantial sentence of incarceration long before the verdict." *Id.* at 9. Such a result is even more disturbing, the court explained, in the circumstances of the Pizza Connection trial, where "[l]iterally months passed without mention of a particular defendant or group of defendants." *Id.* (footnote omitted).[3] So concluding, the court undertook a more flexible approach to the attendance of the defendants at trial.

Initially, the court's method for allowing personal and medical-related absences was sometimes informal and off the record. If permission was granted, a record was made. As the trial progressed, a procedure evolved that included bench conferences. The defendant's counsel would approach the prosecutor with a request for absence. If the prosecutor agreed, both parties would either address the judge in open court or by approaching the bench. In the resulting colloquy, according to Judge Leval, "[t]he court would generally inquire whether the defendant understood his right to be present and whether he was voluntarily and knowingly waiving that right, affirmatively requesting that the trial proceed in his absence and giving up any claim that he was prejudiced by the trial being conducted in his absence. The court would also ascertain whether the Government consented or objected. Upon satisfactory answers, the requests were often granted." *Id.* at 10. According to the Government, the first nine months of the trial saw approximately 50 such oral motions. Thereafter, the court adopted more formal written waiver procedures which continued in use until the end of the trial.

Polizzi had occasion to avail himself of these procedures through the course of the trial.[4] On March 13, 1986, one of Polizzi's

---

3. Indeed, counsel for Polizzi argued at the sentencing proceedings that there were "months during the course of the trial that [Polizzi's] name was never mentioned, that his lawyer never stood up, never made a sound...." Joint App. at 40 (Opinion and Order (quoting Sentencing Tr., June 23, 1987, at 264)).

4. The Government submits that in addition to his own use of the waiver procedure, "Polizzi was present in Court on innumerable occasions during which his co-defendants made applications to absent themselves from trial, acknowledging their right to be present and affirmatively requesting the trial to continue during their absence." Gov't Brief at 9, footnote.

trial counsel, Michael Querques, requested permission for Polizzi to absent himself from trial. In an off-the-record colloquy that took place in Polizzi's presence, counsel advised the court that Polizzi understood his right to be present, and the implications of being absent, and that Polizzi "would never argue that his rights had been violated by his absences at his request." *Id.* at 12. The following on-the-record colloquy ensued, again in Polizzi's presence:

> THE COURT: Mr. Querques has requested that the absence of his client, Mr. Polizzi, be permitted on Thursday of this week. Mr. Querques says that his client wishes to use that time in important trial preparation purposes, that he recognizes his right to be at trial but prefers to use the time for important evidence preparation serving part of his case. I gather, Mr. Querques, that you on behalf of your client represent that he will never contend in this court or any other court that his rights were in any way violated by permitting him to be absent at his request.
>
> MR. QUERQUES: That's absolutely correct.
>
> THE COURT: And that will be true even if vitally important evidence comes out against him during the session that he misses.
>
> MR. QUERQUES: Absolutely.

*Id.*

Again on March 25 and March 31, 1986, Querques requested permission from the court for Polizzi to absent himself from trial for medical-related reasons. On each occasion, an on-the-record exchange evinced Polizzi's affirmative request through counsel that the trial proceed in his absence and a waiver of any claim of prejudice arising from his absence.[5] On April 1, 1986, Querques again asked that the trial proceed in Polizzi's absence. He indicated that Polizzi was not in court that day, explaining that a physician had informed Polizzi that he could not attend the

trial. On the record, Querques asked "that we proceed in his absence with his permission. He waives his right to be here." Absent objection from the government, the court granted the request.

In late April of 1986, Polizzi entered the hospital for non-elective surgery to remove a possibly cancerous lump on his throat. During the course of his surgery and subsequent recuperation, Polizzi was absent from the trial for approximately five weeks. Although the trial transcript does not reflect any application made by Polizzi and/or his lawyer that he be permitted to absent himself from the trial, and that the trial continue in his absence, the record does include references to the surgery and to Polizzi's postoperative convalescence. The Government cites to the June 2, 1986 portion of the transcript, indicating Querques' report to the court on Polizzi's recuperation:

> THE COURT: Mr. Querques, the clerk just handed me some papers from you. Can you elucidate, please?
>
> MR. QUERQUES: The first one is a note from the doctor, Judge, explaining that Mr. Polizzi is going to be delayed in getting back because of some problem he had. The note doesn't refer to it, but it has to do with the stitching in the throat not healing well.

Gov't Brief at 11 (quoting transcript at 18849). Additionally, on June 5, 1986, a prosecutor inadvertently asked a witness for an in-court identification of Polizzi. When it became apparent that Polizzi was still absent, Polizzi's counsel stipulated that Polizzi was not present in court that day, and succeeded in urging the court to advise the jury that Polizzi's absence was due to "medical reasons." *Id.* at 11–12 (quoting transcript at 19406–07). Some time later, on September 30, 1986, the court noted on-the-record that Polizzi had "had an operation a while ago." *Id.* at 12 (quoting

---

5. Neither the court's Opinion and Order, nor the Government's brief, explicitly indicate whether the March 25, 1986 colloquy took place in Poliz- zi's presence. According to Judge Leval, the March 31, 1986 colloquy did take place in his

transcript at 27602).[6]

On March 2, 1987, Polizzi was convicted on the two counts in which he had been charged—count one charging a narcotics conspiracy in violation of 21 U.S.C. § 846, and count sixteen, charging a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). On June 23, 1987, he was sentenced to 20 years imprisonment and a fine of $50,000. Approximately a year after his convictions, on March 3, 1988, Polizzi filed the § 2255 petition which is the focus of this appeal.

### B. *The § 2255 Petition*

That portion of Polizzi's petition confronting this Court on appeal rests, in large part, on the troubling absence of any mention in the trial transcript of a waiver of Polizzi's right to be present with respect to his five-week absence for surgery. Judge Leval candidly stated at the evidentiary hearing on the petition that he was "astonished when it turned out that the record didn't reflect that." Joint App. at 225 (Remarks of Judge Leval). Polizzi submitted that the trial transcript only corroborated his contention that "[a]t no time before I went into the hospital for surgery or thereafter did the judge ask me about my right to be present at trial or ask me if I was voluntarily waiving my right to be present at trial." *Id.* at 45 (Certification of Francesco Polizzi). Citing the right to be present at all stages of his trial, Polizzi argued that his absence without waiver of such right amounted to a constitutional violation compelling the vacation of his convictions. Alternatively, Polizzi contended that even if a sidebar conference as to his surgery-related absence did occur, he was not present for it; that if he was present, he was not advised by the court of his right to

be present at trial nor personally asked whether he waived that right; and if he did state that he waived his right to be present, it was not a knowing, voluntary and intelligent waiver because he believed he had no other options, as neither the court nor his counsel ever advised him of his alleged options to move for severance or an adjournment of the trial.

The court granted Polizzi's request for an evidentiary hearing on the petition. Polizzi testified on his own behalf. The relevant aspects of his sometimes conflicting testimony on direct and cross-examination are as follows: 1) that at no time had he had a conversation with the court, relative to his absence for surgery, in which he was advised of his right to be present at trial and asked if he waived that right, Joint App. at 92; 2) that counsel never advised him of the possibility of applying for a severance or a continuance as a result of his absence, nor was he aware of any application made to the court regarding either procedure, *id.* at 93–95; 3) that he remembered "some" occasions during the trial when the Judge and counsel conferred about the anticipated absence of either a defendant or one of the attorneys from court, *id.* at 101; 4) that he remembered a system during the trial governing the absence of lawyers and defendants who would not be present at trial, *id.* at 102; 5) that through the course of the entire trial, he was only directly before the court on one occasion, when his father was dying, *id.* at 111;[7] 6) that he was "pretty sure" Querques told the court and the government about his surgery and anticipated extended absence, *id.* at 113; 7) that Querques told him he would do so and that "I guess that's what he did," *id.;* 8) that

presence. *See id.* at 14. Polizzi's brief does not address either episode.

6. Upon returning to the trial after his extended absence, Polizzi also had occasion to avail himself of those more formal written procedures for absenting himself that the court had instituted on June 4, 1986. The Government submits that "on several occasions" Polizzi made such formal requests that the trial continue in his absence. *Id.*

7. In his brief, counsel states that "Mr. Polizzi only recalled one occasion during the entire trial when he was directly before the judge, when in late January, 1986, he *requested permission to leave court to be at his father's deathbed.* JA 111–12." Polizzi Brief at 3 (emphasis added). Although the cited pages of the joint appendix do not confirm the emphasized portion of this statement, corroboration of this account is found in Assistant United States Attorney Stewart's testimony at the hearing. Joint App. at 176.

Querques did, in fact, speak to the court about the surgery, *id.* at 120; 9) that he was aware that he had a right to be present at his trial, *id.* at 114, 116; 10) that on one or two occasions he was excused by the court from attending trial, *id.* at 115; 11) that on such occasion(s), he could not recall if the court had excused him while he was actually present, *id.;* 12) that he knew the trial was proceeding during his five-week absence, *id.* at 116; and 13) that he wanted the trial to proceed during his extended absence, *id.* at 117.

Polizzi also called Querques as a witness at the hearing. The inquiry on direct examination was limited, however, to the question of whether Querques had discussed the possibility of a severance or adjournment with Polizzi, given his impending surgery. Querques was not asked any questions regarding the waiver of his client's right to be present during the five-week absence.

The Government relied at the hearing on the testimony of Assistant United States Attorneys Robert C. Stewart and Richard A. Martin. Martin testified that on or about April 15, 1986, Querques and Polizzi approached the Government's table and stated that, in view of Polizzi's need for immediate surgery, Querques intended to ask the court that Polizzi be excused from the trial; Martin, Stewart, Querques, and Polizzi then spoke to the court, with Judge Leval subsequently inquiring as to the gravity of the circumstances and the nature of Polizzi's doctor's advice. Martin recalled the initial colloquy as relatively lengthy, noting that "a lot more was covered than a routine request to be absent for one day." *Id.* at 131 (Testimony of AUSA Richard A. Martin). Martin testified that the court then directly asked Polizzi whether he understood his right to be present and whether he affirmatively requested that the trial proceed in his absence. Polizzi responded affirmatively to each inquiry.

Martin noted that "I recall the incident clearly." *Id.* at 128. He also added that the invariable procedure regarding a waiver of a defendant's right to be present at trial was that such waivers were placed on the record. *Id.* at 153.

Stewart's recollection of the events in question diverged slightly from Martin's. Stewart recalled that sometime around April 15, 1986, Polizzi and one of his trial counsel[8] sought and received his consent for Polizzi's absence for surgery. The three men—defense counsel, Polizzi, and Stewart—then approached the bench, and Polizzi's counsel allegedly made the same representations to the court.[9] The court then asked defense counsel whether Polizzi knew he had a right to be present and waived his presence, and whether Polizzi wanted the trial to continue in his absence. Defense counsel responded affirmatively to such inquiries. The court then turned to Polizzi, "wish[ed] him well with the surgery and express[ed] regret that he had this type of illness." *Id.* at 168. Stewart testified that the "humane and courteous question of Mr. Polizzi that he hoped that he would feel better and recover from the surgery" was the only direct colloquy between the court and Polizzi that day. *Id.* at 180. Stewart also testified that when a waiver was taken, either the Government, the court, or the court reporter would ensure that such fact was placed on the record. *Id.* at 173. His awareness during the trial was that the waiver "absolutely had to go on the record and to my knowledge it was always put on the record, usually at the time that it occurred, but if not then, within moments afterwards when the court reporter became available." *Id.* at 193–94.

At the evidentiary hearing, Judge Leval placed his own recollections as to the events in question on the record. He stated that "I personally have a recollection of being approached with a request for the

---

**8.** *See id.* at 167 (Testimony of Robert C. Stewart) ("If I had to guess I would say it was Mr. Querques....").

**9.** Stewart did not recall Martin's presence at the bench. *Id.* at 189. In his own remarks at the

hearing, Judge Leval observed that he did not "see anything particularly troublesome about the fact that Mr. Stewart remembers himself as being the speaker, while Mr. Martin remembers himself as being the speaker." *Id.* at 229.

absence of Mr. Polizzi in order that he may undergo surgery. I personally remember that happening. I wouldn't be able to tell you very much more than that about it." *Id.* at 222; *see also id.* at 226 ("I do not purport to recall what was said."). He also stated that "the one thing I do remember with clarity is that Mr. Polizzi was actively present, listening to, present at and listening to the conversation and engaged in it to the extent that I exchanged at least some minimum words directly with him, which may, so far as my recollection is concerned, have been no more than my expression of sympathy and of good wishes with his thanking me for them and that kind of thing." *Id.* at 230. Judge Leval added that the request was "quite a significant event, not like one of the millions of routine events in trials, some of which I would recall and some of which I wouldn't recall. But the reason it was a significant event is because it was a request by a defendant to be absent for a significant period of time." *Id.* at 223. Judge Leval was "astonished" to find that the exchange was not in the transcript, *id.* at 225, observing that such a void "certainly was inconsistent with the practices that I followed, to excuse a defendant from court, particularly for a lengthy period of time...." *Id.* at 225–26. Finally, Judge Leval remarked that after having reflected on the question, he found no impediment to relying, at least in part, on his own recollection that a colloquy as to the waiver had occurred. He noted that Polizzi's claim could just as easily have arisen during the trial and that "there are all kinds of situation[s] where a judge has to make rulings during a trial based in part on the judge's personal observations." *Id.* at 228.

On July 13, 1990, the court issued an Opinion and Order denying Polizzi's petition. Judge Leval made the following pertinent factual findings:

Although it is not reflected in the trial transcript (most likely because of a court reporter's mistaken belief that the sidebar conference was intended to be off-the-record), I expressly find that Polizzi was present and participating at a sidebar conference at which Polizzi's counsel Mr. Querques presented Polizzi's application to be absent for surgery, his request that the trial proceed during that absence, his awareness of his right to be present and his waiver of any claims resulting from the trial being conducted in his absence. This finding is based on the hearing testimony of two Assistant U.S. Attorneys. It is also supported by the court's own memory that the conference took place with the defendant Polizzi present. It is further supported by the fact that although Polizzi, through his new lawyer, called his trial counsel Mr. Querques to the stand to testify that he had not advised Polizzi of the importance of certain rights, counsel carefully avoided asking Mr. Querques whether he confirmed Polizzi's contention that Polizzi had not been present at such a colloquy with the court. The failure of Polizzi's lawyer to question Mr. Querques on this issue gives further support to an inference against Polizzi on this question of fact.

*Id.* at 15–16 (footnote omitted).

The court found unavailing Polizzi's contention that the right to be present at trial could only be waived by a defendant's personal statement on the record. Judge Leval held that "[a]lthough the right to presence is not lightly waived, there is no constitutional requirement that the waiver come from the mouth of the defendant, as opposed to his counsel, or that it be recorded." *Id.* at 27.

The Judge also took issue with Polizzi's contention that because the court had not discussed the possibility of a stay or severance with him, his waiver could not have been knowingly and voluntarily made. The court held that there was no obligation to instruct a represented defendant as to every aspect of his rights as the trial progresses and opined that

[i]t would be surprising if a man of Polizzi's sophistication and experience had been so completely unaware of [the fact that illness can excuse an accused defendant from the obligation to face trial] that he did not even raise the question with his attorney.... [F]urthermore,

there were circumstances in this very trial that brought this issue to his attention. Polizzi's co-defendant Giuseppe Ganci, who was shown by the evidence to be his very close friend and associate, moved for and received a severance by reason of his illness and thus escaped trial. . . . It is inconceivable, given Polizzi's intimate relationship with Ganci and the importance of the Ganci severance for the strategy of the other defendants, that Polizzi did not know that Ganci had obtained a severance because of his illness.

*Id.* at 20–21 (footnote omitted).

Having concluded that Polizzi voluntarily and knowingly waived his right to be present, the court turned to the consideration of whether " 'there was on balance a controlling public interest to continue the trial in the defendant's absence.' " *Id.* at 34 (quoting *United States v. Fontanez*, 878 F.2d 33, 35 (2d Cir.1989)). Judge Leval concluded that in view of the peculiar circumstances presented in the case, a controlling public interest to continue the trial in Polizzi's absence had existed.

## DISCUSSION

On appeal, Polizzi contends that the Government has failed to satisfy its purported burden of establishing that his waiver of the right to be present at trial during the five-week absence was voluntarily and knowingly made. At the outset, Polizzi submits that no such waiver ever occurred. He asserts that in view of the presumptive regularity of trial transcripts, the omission of any reference to the waiver in the transcript, standing alone, conclusively establishes the absence of any waiver. Should this Court find that the transcript omission is not dispositive of the waiver question, Polizzi alternatively submits that the procedures employed by the district court to reconstruct the record of the purported waiver were critically flawed, most notably by the court's reliance on its own recollections. Should we nonetheless "condone" the reconstructive procedures employed by the court, and accept its findings, Polizzi finally argues that the unrecorded colloquy

found by the court fails to satisfy the constitutional requirements of a voluntary and knowing waiver.

Polizzi also argues that Querques' failure to advise him of the possibility of a severance or adjournment in view of his extended absence constituted ineffective assistance of counsel. We find the district court's analysis on this point thorough and convincing, and agree with its conclusion that Polizzi's argument is without merit. Hesitating to construct elaborations where none are needed, we refrain from further discussion of the issue and affirm the district court's holding on this point.

We also disagree with Polizzi's waiver argument. We find that the trial record and the evidence presented at the hearing on the petition bear out the district court's conclusion that Polizzi had knowingly and voluntarily waived his right to attend trial while he underwent and recuperated from his surgery. Further, there was on balance a controlling public interest to continue the trial in Polizzi's absence. The district court's denial of Polizzi's § 2255 petition, as such, was not in error. *See Fontanez*, 878 F.2d at 35–36.

It is by now well-established that "an accused enjoys a right both at common law and pursuant to the sixth amendment's confrontation clause to be present at all stages of trial." *Id.* at 35 (citing *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970)). The defendant's right to be present at trial is also implicated by the fair trial concerns of the Fifth and Fourteenth Amendments, " 'to the extent that a fair and just hearing would be thwarted by [the defendant's] absence.' " *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934)). This right has been codified in Federal Rule of Criminal Procedure 43(a) which provides that "[t]he defendant shall be present . . . at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." Fed.R.Crim.P.

43(a); [10] *see also United States v. Mackey*, 915 F.2d 69, 72 (2d Cir.1990) (reciting the legal basis of the right to be present at trial).

■ Despite its constitutional and statutory underpinnings, the right to be present may be waived by the defendant. *United States v. Crutcher*, 405 F.2d 239, 243 (2d Cir.1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969). A waiver of this guarantee, as the waiver of any constitutional right in a criminal proceeding, must be knowing and voluntary. *Sassower v. Sheriff of Westchester County*, 824 F.2d 184, 191 (2d Cir.1987); *United States v. Tortora*, 464 F.2d 1202, 1208 (2d Cir.), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). In reviewing the district court's decision that Polizzi was knowingly and voluntarily absent from trial during his five-week absence, we are guided by the standards recently set forth in *Fontanez*, 878 F.2d at 35–36. Our first inquiry under *Fontanez* is whether the court properly exercised its discretion in finding that Polizzi knowingly and voluntarily waived the right to be present. *Id.* at 35. For the purposes of such inquiry, the court's factual findings as to whether Polizzi was knowingly and voluntarily absent will not be disturbed unless "clearly erroneous." *Id.* at 36 (citation omitted); see also Fed.R.Civ.P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous...."). If the court properly found the right waived, the inquiry turns to an analysis of whether the court abused its discretion in concluding that there was on balance a controlling public interest to continue the trial in Polizzi's absence. *Fontanez*, 878 F.2d at 35–36. Lastly, if the court erred in continuing the trial in Polizzi's absence, we ask whether the error was harmless. *Id.* at 36.

### A. *Knowing and Voluntary Waiver*

#### 1. *The Court's Factual Findings*

■ The district court's express factual findings, that in an unrecorded conference in Polizzi's presence, his attorney requested permission for his absence, acknowledged Polizzi's awareness of his right to be present, and waived any future claim of prejudice to Polizzi's rights by reason of the grant of his request, were critical to its holding that Polizzi voluntarily and knowingly waived his right to be present during his five-week absence from the trial. As indicated above, this factual determination will not be disturbed unless clearly erroneous. Moreover, to the extent that this finding rested in part on a credibility appraisal, even greater deference is accorded the trial court's findings. *See United States v. $10,000 in United States Currency*, 780 F.2d 213, 220 (2d Cir.1986) ("when the findings of fact are so based, Rule 52 demands even greater deference to the trial court's findings.").[11]

■ We concur with the Government's estimation that "Polizzi's challenge to Judge Leval's assessment of the evidence and evaluation of the credibility of the witnesses falls woefully short of establishing that the Court's findings are clearly erroneous." Gov't Brief at 22. Judge Leval's conclusions were amply supported by the full record, and we cannot take issue with his explicit reliance on the hearing testimony of Assistant United States Attorneys Martin and Stewart, his own recollection, and the implication of Polizzi's lawyer's failure to question Querques on any colloquy with the court regarding Polizzi's five-week absence. *See supra* p. 1318.[12]

---

**10.** In framing Rule 43, Congress "explicitly intended to codify existing law concerning a defendant's constitutional and common law rights to be present throughout trial." *United States v. Alessandrello*, 637 F.2d 131, 138 (3d Cir.1980), *cert. denied*, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981).

**11.** The district court made the explicit credibility appraisal that "Polizzi's testimony was inaccurate. It conflicted with the testimony of two

Government attorneys, as well [as] with the court's recollection." Joint App. at 39 (Opinion and Order).

**12.** We do not find the gap in the transcript dispositive of the question of whether the waiver ever occurred. The district court's holding that "there is no constitutional requirement that the waiver ... be recorded," Joint App. at 27 (Opinion and Order), is correct. *See Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82

That the full record included post-trial reconstruction of the missing portion of the trial transcript does not, standing alone, mar its reliability. This Court has explicitly sanctioned further evidentiary inquiry by a district court where the record "[was] insufficient to determine whether the appellant knowingly and voluntarily absented himself from the proceedings...." *United States v. Hernandez*, 873 F.2d 516, 519 (2d Cir.1989); *see also Crutcher*, 405 F.2d at 244 ("we hold that a remand will be necessary ... to determine the question of understanding waiver."). Moreover, the rules governing § 2255 proceedings make explicit provision for the expansion by the district courts of the extant record through the inclusion of additional written materials, and the holding of evidentiary hearings. *See* Rules Governing Section 2255 Proceedings in the United States District Courts at Rules 7, 8.

As to the court's stated reliance on the testimony of Assistant United States Attorneys Martin and Stewart, Polizzi's argument that their testimony was "inconsistent in critical respects and differs from the trial judge's recollections" simply overstates his case. Polizzi Brief at 18. Although there were variances in the testimony, *see supra* pp. 1316–1317, the prosecutors were consistent in their recollections that Polizzi was present at a colloquy before Judge Leval, and that the court elicited responses from either Polizzi or his counsel clearly indicating that Polizzi understood his right to be present, and af-

firmatively sought to absent himself from the trial, knowing it would proceed in his absence. As the district court noted, "Mr. Stewart's testimony reinforces that of Mr. Martin as to the crucial points: the existence of the sidebar conference and Polizzi's presence at that conference." Joint App. at 18 (Opinion and Order). Further, the prosecutors' testimony as to such essential points did not "differ" from Judge Leval's own recollection.

■ We cannot agree with Polizzi that the court's factual findings are tainted insofar as they rely, in part, on the court's own recollections. Polizzi submits that, in so relying, the court effectively deprived him of his Sixth Amendment right to confront the testimony against him and denied him the right to a neutral and detached decision-maker. As the court correctly stated in its ruling, however, a trial judge may rely on his or her own recollections and observations when ruling on a § 2255 motion. In *Zovluck v. United States*, 448 F.2d 339 (2d Cir.1971), *cert. denied*, 405 U.S. 1043, 92 S.Ct. 1327, 31 L.Ed.2d 585 (1972), this Court held that it is not a ground for disqualification that the trial judge also handled the original trial and sentence. *Id.* at 343 (citing *United States v. Delsanter*, 433 F.2d 972 (2d Cir.1970), and *Mirra v. United States*, 379 F.2d 782, 787–88 (2d Cir.), *cert. denied*, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967)). We added in *Zovluck* that the trial court's "recollection and observation, checked against the record and memory of counsel,

L.Ed. 1461 (1938) (while noting that it would be "fitting and appropriate for [a waiver] determination to appear upon the record," the Supreme Court stopped short of holding that an on-the-record waiver was constitutionally mandated); *United States v. Crutcher*, 405 F.2d 239, 244 (2d Cir.1968) (emphasis added) ("the *preferred practice* [for obtaining waiver of the right to be present] would be for the court to advise the defendant of his rights under Rule 43 and, if the defendant so desires, obtain an intelligent and knowing waiver on the record."), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969).

Moreover, while in no way making light of the disturbing omission, we find plausible the court's explanation as to why the colloquy was not reflected in the transcript. The court stated that

[t]he fact that it does not appear in the transcript *is easily explained.* Commonly the court conducted off-the-record sidebar conferences with counsel and defendants concerning personal problems. The reporter would generally be present, waiting in the event that after the informal conference a record was to be made about the grant or denial of some request. Often, if the issue discussed was of no legal significance, no record at all would be made. On some occasions, an informal unrecorded discussion was followed by the making of a formal record. On others, the entire conference would be recorded. Apparently, on this occasion, the reporter believed the conference was an informal off the record discussion while the two prosecutors and the judge believed it was being formally recorded.

Joint App. at 18.

... may be a valuable aid to a § 2255 determination." *Id.; see also Delsanter,* 433 F.2d at 973–74 (citations omitted) ("Nor do we find any merit in appellant's contention that a hearing on the voluntariness of a guilty plea must be conducted by a judge other than the one who accepted the plea. Such a procedure is not required by Section 2255, and the practice in this circuit is otherwise. That the judge may bring to bear his personal knowledge of prior proceedings is an advantage rather than a mark of inherent prejudice.").

■ Moreover, we agree with the Government that Polizzi waived the claim that Judge Leval should have recused himself when he failed to timely move for such recusal pursuant to 28 U.S.C. § 144 or 28 U.S.C. § 455. Section 144 provides that a judge should recuse himself when a party has filed a "timely and sufficient affidavit" showing that the judge has "a personal bias or prejudice" against the party or in favor of an adverse party. It is well-settled, however, "that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Apple v. Jewish Hosp. and Medical Center,* 829 F.2d 326, 333 (2d Cir.1987) (citations omitted). Section 455 provides that a judge shall disqualify himself in any proceeding in which, *inter alia,* his impartiality might reasonably be questioned and/or in any proceeding where he has a personal bias or prejudice concerning a party. While § 455 does not explicitly contain a timeliness requirement for the filing of a recusal claim, timeliness has been read into this section as well. *See In re International Business Machines,* 618 F.2d 923, 932 (2d Cir.1980). Having never moved for Judge Leval's recusal, let alone having done so timely, Polizzi is poorly positioned at this late date to take issue with the court's role in the evidentiary hearing on the petition.

■ Finally, we find that the court's factual finding was appropriately buttressed by Polizzi's counsel's failure to examine Querques regarding the waiver question. *See supra* p. 1318. Polizzi's contention

that the court's drawing of such an inference from the scope of counsel's direct examination worked an improper shifting of the burden on the waiver issue is a red herring. In the first instance, Polizzi's understanding that the Government bears the ultimate burden of proof of establishing that the purported waiver occurred, and that it was voluntary and knowing, is in error. We have recently reiterated that a habeas corpus proceeding "is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment of conviction. Because of this, the petitioner generally bears the burden of proof throughout the habeas proceeding." *Pinkney v. Keane,* 920 F.2d 1090, 1094 (2d Cir.1990) (citations omitted). This allocation of the burden of proof extends to the question of a valid waiver. As the Supreme Court observed in *Johnson v. Zerbst,*

> [i]t must be remembered, however, that a judgment can not be lightly set aside by collateral attack, even on *habeas corpus.* When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus,* the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel.

304 U.S. 458, 468–69, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938) (footnote omitted).

■ Even assuming, *arguendo,* that the burden of proof for establishing a waiver rested with the Government, the argument that the inference drawn by the court from Querques' limited examination thereby worked a shifting of the burden is flawed. We agree with the Government's analysis on this point: "Even during a criminal trial, where the burden of proof is unquestionably on the government, it is proper—and certainly not burden shifting—for the finder of fact to draw an inference against the defendant from his failure to question witnesses regarding disputed

issues." Gov't Brief at 25 (citing *United States v. Parker*, 903 F.2d 91, 98 (2d Cir. 1990); *United States v. Walker*, 835 F.2d 983, 989 (2d Cir.1987); *United States v. Bubar*, 567 F.2d 192, 199 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977)).

In view of the foregoing, we cannot find that the court's factual findings as to the conference regarding Polizzi's impending absence, and Polizzi's presence at that conference, were clearly erroneous. The court's explicit rejection of Polizzi's assertion that he was not present for the colloquy cannot be deemed unreasonable when three individuals recalled his presence at such a conference, and only Polizzi, who had the most compelling motive conveniently to forget the episode, maintained that he was not present. *See supra* pp. 1316–1318. In addition, we note that although in testifying at the evidentiary hearing Polizzi denied his own presence at any colloquy, he effectively corroborated the court's finding that a colloquy as to the waiver did, in fact, occur. *See* Joint App. at 119–20. Further, Polizzi's counsel at the hearing stated in an exchange with the court that "I am absolutely certain Mr. Querques made an application [as to the waiver]." *Id.* at 231.

Having found that the court's factual findings were not clearly erroneous, we turn under the *Fontanez* analysis to the question of whether the court properly exercised its discretion in concluding, on the basis of these factual findings, that Polizzi knowingly and voluntarily waived his right to be present at trial. *See North Carolina v. Butler*, 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1757–58, 60 L.Ed.2d 286 (1979) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)) ("the question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' ")

2. *Finding of Knowing and Voluntary Waiver*

■ Polizzi submits that, even assuming the truth of the facts found by the district court, the court's ultimate conclusion that a knowing and voluntary waiver had resulted is in error. He asserts that the reconstructed record could not have established an effective waiver where such purported waiver was neither personally made by him, nor made by him with full knowledge of his rights. We disagree.

■ As an initial matter, we take issue with Polizzi's contention that the trial court must conduct a direct colloquy with the defendant. Although it is certainly preferable that the waiver come from the defendant directly, there is no constitutional requirement to that effect. *See Crutcher*, 405 F.2d at 244. In *Crutcher*, this Court specifically rejected the argument that only the defendant could personally waive his right to be present. *See id.* at 343 ("the issue is whether Payne *or his counsel* have made an effective waiver.") (emphasis added); *see also United States v. Dioguardi*, 428 F.2d 1033, 1039–40 (2d Cir.), *cert. denied*, 400 U.S. 825, 91 S.Ct. 50, 27 L.Ed.2d 54 (1970). To hold otherwise, specifically, that an effective waiver requires the defendant's personal statement in court, would be to construct what Judge Leval wisely regarded as a "burdensome, impractical and wholly unnecessary" rule. Joint App. at 31. Indeed, taken to its logical conclusion, such a rule would work the unwieldly result of leaving ineffective as a waiver the voluntary failure to appear for trial. *See United States v. Sanchez*, 790 F.2d 245, 250 (2d Cir.), *cert. denied*, 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986) (where defendant failed to appear at trial, and defense counsel acknowledged that "there is no evidence where [Sanchez] is", the district court did not err in finding a voluntary waiver by defendant of his right to be present).

Polizzi next argues that, even if a waiver need not have come directly from his mouth, any waiver by his counsel could not have been effective. Since he now claims ignorance of the severance and adjournment alternatives purportedly available to him, Polizzi argues the waiver cannot be said to have been knowing and voluntary. In his ruling, Judge Leval rejected the no-

**1323**

tion that he was somehow obliged to inform Polizzi of such alternatives, and further took issue with Polizzi's contention that he was personally unaware of the alternatives. To the extent that the latter analysis by the court amounted to a credibility appraisal—"I doubt Polizzi's contention that he was unaware of his right to a severance or stay if he was too sick to be present at trial"—we extend considerable deference to the court's assessment. *See $10,000 in United States Currency,* 780 F.2d at 220. Having revisited the court's finding, *see supra* pp. 1318–1319, we hold that it was not clear error for the district court to conclude that Polizzi was aware of the possibility of moving for a severance or an adjournment of the trial.

 We also agree with the district court's conclusion that whether or not Polizzi was aware of these alternatives, no obligation to alert him personally to such options rested with the court:

> [v]irtually every move made during trial involves giving up a right, some of them very important. The proposition that the court must advise the defendant personally every time the defendant's lawyer announces a step that involves the waiver of some right, is simply ridiculous. Although we are careful with a defendant's right to be present at his trial, the court is not under an obligation to be sure the defendant is aware of all possible alternatives before granting the defendant's request.

Joint App. at 33 (footnote omitted).

In view of the foregoing, we hold that the district court properly found that Polizzi knowingly and voluntarily waived his right to be present at trial.

**B.** *Controlling Public Interest*

Having so concluded, we are guided by *Fontanez* to a determination of whether the court abused its discretion in concluding that there was on balance a controlling public interest to continue the trial in Polizzi's absence. *See* Joint App. at 34–35. We find no such abuse.

Presumably recognizing the futility of such an exercise, Polizzi has refrained from

challenging the district court's findings and conclusions on this point. We also find no grounds for objection and accordingly affirm these written findings and conclusions.

### CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Polizzi's § 2255 petition.