John MONTGOMERY, Petitioner,

v.

Christopher ARTUZ, Respondent,

and

Howard R. Relin, Intervenor.

No. 97–CV–6128L.

United States District Court,
W.D. New York.

Oct. 16, 1998.

John Montgomery, Stormville, NY, pro se.

Loretta S. Courtney, Monroe County District Attorney, Rochester, NY, for Christopher Artuz and Howard R. Relin.

## DECISION AND ORDER

LARIMER, Chief Judge.

Petitioner, John Montgomery, who is currently incarcerated at Green Haven Correctional Facility, filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Montgomery claims that his convictions for criminal possession of a controlled substance were obtained in violation of his constitutional rights. For the reasons that follow, Montgomery's petition is dismissed.

## BACKGROUND

On May 3, 1990, after a jury trial in New York State Supreme Court, Monroe County (Doyle, J.), Montgomery was convicted of criminal possession of a controlled substance in the first and third degrees.

The Supreme Court, Appellate Division, Fourth Department, affirmed the convictions on February 2, 1996. *People v. Montgomery*, 224 A.D.2d 914, 637 N.Y.S.2d 577 (4th Dep't 1996). On May 17, 1996, the New York State Court of Appeals denied leave to appeal. *People v. Montgomery*, 88 N.Y.2d 882, 645 N.Y.S.2d 456, 668 N.E.2d 427 (1996).

Montgomery also filed a motion to vacate the judgment of conviction, pursuant to N.Y.Crim.Proc.Law § 440.10. New York State Supreme Court, Monroe County (Wisner, J.), denied the motion on February 6, 1996, and the Appellate Division, Fourth Department, denied leave to appeal on May 21, 1996.

In this habeas corpus petition, which was filed on April 3, 1997, Montgomery raises nine grounds for relief: (1) his convictions were obtained with evidence secured pursuant to an unlawful arrest; (2) his convictions were obtained with evidence secured pursuant to an unconstitutional search and seizure; (3) his convictions were obtained with evidence secured pursuant to a coerced consent to search; (4) his convictions were obtained with improperly admitted statements; (5) he was not present at a crucial part of the suppression hearing; (6) one of the jurors may have overheard a damaging conversation between the prosecutor and his lawyer during a recess; (7) the judge displayed bias toward him during the suppression hearing and the trial; (8) the prosecutor failed to produce *Brady* material; and (9) he was denied effective assistance of appellate counsel.

## DISCUSSION

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, which was signed into law on April 24, 1996, significantly amended the habeas corpus statute. The statute now provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not

be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Further, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). I examine each of petitioner's claims under these standards.

### 1. Suppression Hearing Claims

Montgomery's first four claims challenge his arrest, the subsequent search of his residence and seizure of evidence, and the admissibility of certain statements he made to police at the time of his arrest.

Prior to petitioner's trial, Judge Doyle held a suppression hearing during which the issues surrounding probable cause, the consent to search, and the statements were addressed. I have thoroughly reviewed the transcript of that hearing.

At the hearing, which lasted for several days, the defense vigorously litigated the issues by cross-examining the two prosecution witnesses and by presenting five witnesses for the defense, including petitioner. The judge denied petitioner's suppression motion in a sixteen-page decision, setting forth detailed findings of fact and conclusions of law, *People v. Montgomery*, No. 323–89 (Sup.Ct. Monroe County Mar. 20, 1990) (hereinafter "S.H. Decision"), which were affirmed on appeal from the conviction. Based on this record, I find that these claims were fully adjudicated on the merits in the state court proceedings.

At the suppression hearing, the judge found the credible testimony to reveal that on November 23, 1988, undercover police officer Michael Mazzeo met with Henry DeJonge, an individual who had previously agreed to obtain cocaine for Mazzeo. At that meeting, Mazzeo gave DeJonge money for the drug purchase. DeJonge then left Mazzeo and walked toward his supplier's house. Officer William Morris, acting in an undercover capacity, was surveilling him and his trip to his supplier. Morris witnessed a drug transaction between DeJonge and Montgomery on Montgomery's front porch; DeJonge handed money to Montgomery, and Montgomery handed cocaine to DeJonge. When DeJonge returned with the drugs for Mazzeo, he was arrested.

Mazzeo, Morris, and several other members of the Rochester Police Department then proceeded to Montgomery's house. When Montgomery answered the door, Morris identified himself as a police officer. Montgomery stated that he knew why the officers were there, that they should come in, and that what they were looking for was under the dresser in the bedroom. After Montgomery was arrested, he executed a consent form for search of the premises. This search resulted in the seizure of twelve ounces of cocaine, a shotgun, a set of scales, and $32,000 in cash.

In ruling on whether the officers had probable cause to arrest Montgomery, the state court utilized the governing Supreme Court standard: "Probable cause exists where 'the facts and circumstances within ... [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). *See* S.H. Decision at 8.

The state court reasoned:

Morris observed a small white package being exchanged for money between DeJonge and the Defendant while the men stood on the porch and in the doorway of 32 Buena Place. This fact, coupled with the Investigator's 15 years' experience in

narcotics investigations and his prior knowledge of DeJonge's purpose in going to Buena Place, gave rise to the probable cause necessary to arrest the Defendant.

S.H. Decision at 9. The court also found that Montgomery had consented to the entry of the police into his home, and, therefore, his arrest was proper under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). S.H. Decision at 10–11.

Further, with respect to the search of the premises, the state court determined that the "[c]onsent to search was freely given by the Defendant in an effort to cooperate with the police." S.H. Decision at 14–15.

Finally, in ruling on the admissibility of Montgomery's statements, the state court found that the statements made in the doorway—*i.e.*, that he knew why the officers were there, that they should come in, and that what they were looking for was under the dresser in the bedroom—were made while Montgomery was not in custody and, therefore, were admissible. The court did determine that any statements made by petitioner after he was arrested were inadmissible because Montgomery was not advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). S.H. Decision at 15–16.

The Appellate Division, Fourth Department, reviewed the suppression court's factual and legal rulings on appeal and affirmed:

> We reject [Montgomery's] contention that Supreme Court erred in denying his motion to suppress physical evidence seized during a search of his apartment. The People established that probable cause existed for defendant's arrest. The court credited the testimony of police officers that, after defendant invited them into his apartment, they arrested him, and that defendant consented to the search of his apartment. Although defendant presented a contrary version of those events, there is no basis in the record to disturb the suppression court's assessment of credibility.

*People v. Montgomery*, 224 A.D.2d 914, 914–15, 637 N.Y.S.2d 577 (4th Dep't 1996).

Based on my review of the record, I find that the decisions of the state court and of the Fourth Department were not based on an unreasonable determination of the facts in light of the evidence presented or contrary to clearly established federal law. Petitioner simply has not supported by clear and convincing evidence his allegations in support of his petition on these claims relating to his arrest. Accordingly, habeas corpus relief is denied on these claims.

### 2. Conference in Chambers

■ During the suppression hearing, Judge Doyle met with counsel in chambers to listen to a tape recording from a body wire worn by one of the officers. Montgomery maintains that he was not present when the recording was played, and, therefore, his rights were violated.

■ It is well settled that a criminal defendant has a constitutional right to be present at all stages of his trial. *Tankleff v. Senkowski*, 135 F.3d 235, 246 (2d Cir.1998); *United States v. Reiter*, 897 F.2d 639, 642 (2d Cir.1990). This right, however, may be waived by the defendant or his attorney. *Polizzi v. United States*, 926 F.2d 1311, 1322 (2d Cir.1991); *Ramos v. Keane*, 1994 WL 97080, at *5 (S.D.N.Y. Mar.23, 1994).

Based on my careful review of the suppression hearing transcript, I find that petitioner waived his right to be present when the recording was played. On November 30, 1989, the judge met with counsel in chambers at 2:20 p.m. (S.T. at 441.)[1] At that time, Montgomery's attorney stated on the record that before they played the tape, he wanted to advise his client of his right to be present. (S.T. at 443.) Defense counsel went and conferred with petitioner, and when he returned, he indicated on the record that petitioner agreed to waive his presence. (S.T. at 444.) Petitioner does not now dispute this. The judge and counsel then proceeded to listen to the tape. (S.T. at 444–47).

---

1. "S.T." signifies the transcript of the suppression hearing, which was held on November 20, 21, 29, 30, 1989.

In light of this express waiver, I reject petitioner's claim that his rights were violated due to his absence from the proceedings in chambers.

### 3. Contact With Juror

█ During petitioner's trial, the attorneys learned that one of the jurors was present in an elevator while the prosecutor and defense counsel were discussing the case. Defense counsel disclosed to the judge that he and the prosecutor may have made certain ambiguous statements that could have been interpreted as an indication of Montgomery's guilt. (T.T. at 519–20.)[2] Petitioner now argues that his constitutional right to a fair trial by an impartial jury was compromised.

█ "A court's determination that a juror is capable of rendering an impartial verdict is a factual determination involving credibility, and therefore is granted particular deference." *Ingram v. Senkowski*, 1997 WL 738101, at *3 (2d Cir. Nov.24, 1997).

Here, the judge immediately spoke with the juror about this incident. (T.T. at 517–19.) The juror indicated that she had, in fact, seen the two attorneys on the elevator that morning, but that she did not overhear any part of their conversation. (T.T. at 518.) According to the juror, she was at the back of the elevator and was not paying any attention. (T.T. at 518–19.) This inquiry was deemed satisfactory to both attorneys at the time. (T.T. at 519–20.)

I find that the trial judge, after witnessing the juror's demeanor, determined that she had no improper contact and remained capable of rendering an impartial verdict. Because petitioner has failed to convince me that this determination was clearly erroneous, I must defer to it. Accordingly, there is no basis for habeas corpus relief on this claim.

### 4. Judge's Bias

█ Montgomery maintains that the judge displayed an ongoing bias toward him at the suppression hearing and throughout the trial. As a result, petitioner maintains that he was deprived of his right to a fair trial.

█ It is beyond dispute that a criminal defendant has a constitutional right to a "fair trial in a fair tribunal," *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997). Based on my careful review of the transcripts from both the suppression hearing and the trial, I do not find that petitioner was deprived his right to a fair trial, and this claim for relief is without merit.

One specific instance, however, warrants further discussion. During the suppression hearing, the defense called a civil engineer, employed by the Town of Penfield, as an expert witness to specifically counter some of the police officers' testimony. Defense counsel later learned that the judge had called the Town of Penfield supervisor allegedly expressing dissatisfaction with the town officials' testimony on behalf of a "drug addict." (T.T. at 2–3.) Defense counsel asked the judge to recuse himself due to the appearance of impropriety and bias. (T.T. at 3–4.)

In denying the request for recusal, the judge specifically stated on the record that he had called the supervisor to advise him that an employee had testified during normal working hours and that the supervisor should ensure that the employee had taken time off from work to do so. (T.T. at 4.) According to the judge, he thought it would be inappropriate for a public official to be testifying on the taxpayers' time in a case where the official had been privately retained as an expert. (T.T. at 4–5.) The judge emphasized that this was the extent of the conversation and that there was no reference made to a "drug addict." (T.T. at 5.) The judge reiterated these sentiments later in the trial when defense counsel again raised the issue. (T.T. at 397–99.) At that time, the judge stated:

---

**2.** "T.T." signifies the transcript of the trial, which was held on March 26, 28, 30 and April 2, 3, 4, 1990.

"Now, there is no way that I will condone a public official performing private business while on the public payroll when it comes to my attention in the manner in which it did. I feel I have an obligation to bring it to the attention of the properly elected officials of that municipality." (T.T. at 399.)

The Appellate Division, Fourth Department, affirmed the trial judge's decision not to recuse himself:

The record does not support defendant's contention that the conduct of the Judge during the suppression hearing demonstrated bias or prejudice against defendant. The court's communication with the supervisor of a defense witness concerned an issue unrelated to the matter of defendant's guilt and was satisfactorily explained by the Judge. Recusal is a discretionary matter within the personal conscience of the Judge, and we conclude that there was no abuse of discretion in this case.

*People v. Montgomery*, 224 A.D.2d 914, 915, 637 N.Y.S.2d 577 (4th Dep't 1996).

I find that there is no basis in the record before me to conclude that a constitutional violation occurred here. The trial judge's decision and the affirmance by the Fourth Department were not contrary to established federal law or based on an unreasonable determination of the facts. Moreover, the civil engineer was called as a witness at trial and offered full and complete testimony. Therefore, Judge Doyle's phone call did not result in any prejudice to petitioner's case. Accordingly, habeas corpus relief is denied on this claim.

**5. *Brady* Material**

■ Montgomery also argues that the district attorney's office failed to disclose evidence favorable to him in violation of his due process rights under the Fourteenth Amendment, as articulated by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, petitioner claims that the prosecutor was aware of documents and a pending federal investigation concerning the conduct of the police officers who arrested him and failed to apprise defense counsel of this information.

Petitioner raised this claim for the first time in his motion to vacate his conviction. The Supreme Court, Monroe County (Wisner, J.), issued a written decision on February 6, 1996, denying that motion. Therein, the court explained:

[Montgomery's] principal contention is that the prosecutor and the court knew that the police officers involved in this case were the subject of a federal corruption investigation and kept this information hidden from the defense in violation of Brady. Defendant, however, has presented no proof to support his accusations. Indeed, newspaper articles which were written in 1994 and submitted on this motion indicate that the Federal probe did not begin until October 1990, months after defendant's trial and conviction. Defendant's reliance on a series of internal District Attorney [memoranda] recounted in these articles [does] not support his argument. These memos, which according to the newspaper accounts began in May, 1989, do not appear to be related to this case, and as reported do not document any specific acts of misconduct on the part of the police. Defendant has presented no proof that at any time relevant to this case the People suppressed disclosure of information exculpatory of the defendant, or of evidence impeaching the credibility of a prosecution witness whose testimony was determinative of guilt or innocence.

*People v. Montgomery*, No. 323–89, at 3–4 (Sup.Ct. Monroe County Feb. 6, 1996) (citation omitted).

Here, Montgomery has not submitted any evidence to rebut the presumption of correctness of the state court's finding that the district attorney's office did not withhold *Brady* material. *Chapman v. Vanzandt*, 1997 WL 375668, at *3–4 (S.D.N.Y. July 8, 1997). Evidence concerning the arresting officers in other cases came to light well after petitioner's conviction. I find, therefore, that the decision of the state court is not contrary to established federal law or based on an unreasonable determination of the facts presented here. Accordingly, petitioner's appli-

cation for a writ of habeas corpus is denied on this claim.

### 6. Ineffective Assistance of Counsel

█ Petitioner argues that he was denied effective assistance of counsel on his appeal. Although Montgomery concedes that his appellate attorney raised two nonfrivolous appellate issues, he maintains that the representation was nevertheless deficient because counsel did not raise any issues regarding the suppression hearing.

█ In order to establish a claim for ineffective assistance of counsel in violation of the Sixth Amendment, petitioner must demonstrate: (1) counsel's representation "fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the *Strickland* test was formulated in the context of a claim regarding trial representation, it also applies to claims regarding appellate representation. *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *Abdurrahman v. Henderson,* 897 F.2d 71, 74 (2d Cir.1990). Here, Montgomery has failed to make an adequate showing of either unreasonableness or prejudice.

█ The record before me does not indicate that petitioner's appellate counsel acted unreasonably in failing to raise any issues regarding the suppression hearing. In light of the fact that the suppression hearing was lengthy, the issues were thoroughly litigated, and the trial judge set forth detailed findings of fact (based on credibility determinations) and conclusions of law, counsel may have made a tactical decision that there were no issues warranting appellate review. Instead, appellate counsel pressed two other legal issues that even petitioner acknowledges were legitimate. The law is clear that every nonfrivolous claim need not be raised "if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Further, as the reviewing court, I " 'must indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.' " *United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

Petitioner suggests that his appellate attorney may not have vigorously advocated on his behalf because he was a Monroe County public defender, working, at the time of the appeal, under the auspices of the Monroe County Executive, Jack Doyle, the trial judge in this matter. I find that this argument is completely baseless and totally unsupported in the record. There is simply nothing before me to illustrate that petitioner's counsel failed to exercise sound professional judgment in this matter or otherwise acted unreasonably.

Even if I were to assume that counsel's representation fell below an objective standard of reasonableness, petitioner has failed to demonstrate any reasonable probability that the outcome of his appeal would have been different. Petitioner raised the suppression issues before the Appellate Division in a *pro se* supplemental brief. Indeed, he devoted nearly forty pages to the issues. The Appellate Division, Fourth Department, clearly considered the issues. In fact, it was the first issue that the Court addressed in its decision:

> We reject [Montgomery's] contention that Supreme Court erred in denying his motion to suppress physical evidence seized during a search of his apartment. The People established that probable cause existed for defendant's arrest. The court credited the testimony of police officers that, after defendant invited them into his apartment, they arrested him, and that defendant consented to the search of his apartment. Although defendant presented a contrary version of those events, there is no basis in the record to disturb the suppression court's assessment of credibility.

*People v. Montgomery*, 224 A.D.2d 914, 914–15, 637 N.Y.S.2d 577 (4th Dep't 1996). I find, therefore, that even if these claims had been raised by an attorney instead of petitioner, the outcome of the state appeal would not have been affected. *Abdurrahman*, 897 F.2d at 75. Accordingly, there is no basis for habeas corpus relief on this claim.

## CONCLUSION

For the foregoing reasons, Montgomery's application for a writ of habeas corpus is denied in its entirety, and the petition is dismissed. Further, because Montgomery has failed to make a substantial showing of a denial of a constitutional right, I deny a certificate of appealability. 28 U.S.C. § 2253.

IT IS SO ORDERED.